Present: All the Justices

ROSCOE H. ISBELL

v.  Record No. 061000 OPINION BY JUSTICE CYNTHIA D. KINSER
                                       April 20, 2007

COMMERCIAL INVESTMENT ASSOCIATES, INC.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Randall G. Johnson, Judge

In this appeal, we consider the question whether the Virginia Residential Landlord and Tenant Act, Code §§ 55-248.2 through –248.40 (the Act), creates a statutory cause of action allowing a tenant to recover damages for personal injuries resulting from his landlord's alleged noncompliance with duties imposed by the Act. We find that the General Assembly did not plainly manifest an intention to abrogate the common law rule that a landlord is not liable in tort for a tenant's personal injuries caused by the landlord's failure to repair premises under the tenant's control and possession. Therefore, we will affirm the judgment of the circuit court granting the landlord's motion for summary judgment.

FACTS AND PROCEEDINGS

In a motion for judgment asserting a common law negligence claim, Roscoe H. Isbell sought damages against Commercial Investment Associates, Inc. (Commercial) and Bar

Properties, LLC for personal injuries Isbell allegedly sustained when he fell down worn and slippery stairs located inside an apartment he leased from the named defendants.[1]  Isbell claimed that the stairway's state of disrepair was brought about by the defendants' alleged negligence in failing to inspect and maintain the premises, and in failing to replace or repair unsafe conditions.  He also alleged that the condition of the stairs posed an unreasonable risk of harm to persons such as Isbell and that the defendants negligently failed to warn him of the unsafe condition of the stairway.

Commercial filed a motion for summary judgment, asserting that Isbell failed to state a claim upon which relief could be granted because, as a matter of law, a landlord owes no duty to maintain premises that are within a tenant's exclusive control.  In his written response to the motion for summary judgment and during oral argument on the motion, Isbell argued that a violation of the Act gives rise to a private cause of action for personal injury. Although the circuit court opined from the bench that the

---

[1] In its grounds of defense to Isbell's motion for judgment, Commercial acknowledged that it managed the leased premises and that Bar Properties, LLC was the owner at the time Isbell allegedly sustained his injuries. Isbell nonsuited his claim against Bar Properties, LLC, and it is therefore not a party to this appeal.

Act does not create such an action, it took the motion for summary judgment under advisement.

Isbell subsequently requested leave to file an amended motion for judgment. In his proposed amended pleading, Isbell once again asserted a claim for common law negligence. He also alleged that he was entitled to recover under the Act, claiming that the defendants' "failure to maintain and/or repair the property, [and] failure to warn [Isbell] . . . constituted a breach and violation of the [d]efendants' duties, obligations, and responsibilities under the . . . Act . . . and [that] said breaches and violations proximately caused [his] damages and injuries."

After additional oral argument, the circuit court granted Commercial's motion for summary judgment, denied Isbell's motion to file an amended motion for judgment, and dismissed the action against Commercial with prejudice. In a letter opinion, the circuit court first explained that, based on this Court's decisions in Caudill v. Gibson Fuel Co., 185 Va. 233, 38 S.E.2d 465 (1946), and Paytan v. Rowland, 208 Va. 24, 155 S.E.2d 36 (1967), a landlord's failure to fulfill a contractual obligation to repair leased premises under a tenant's possession and control does not impose liability in tort on the landlord. Thus,

3

the circuit court concluded that Isbell failed to state a cause of action under the common law for his alleged personal injuries.

The circuit court also concluded that Isbell could not recover monetary damages for personal injuries under the Act. Analyzing the provisions of Code § 55-248.40, the circuit court reasoned that damages under that section were only available in tandem with an award of an injunction. Since Isbell no longer resided on the premises where he allegedly sustained his injuries, the court concluded that Isbell was not entitled to either injunctive relief or damages. We awarded Isbell this appeal, limited to the issue whether the circuit court erred in holding that the Act "could not be relied upon by [Isbell] in support of a private cause of action for damages."[2]

ANALYSIS

The question whether the Act abrogates the common law and provides a tenant with a statutory cause of action in tort against his or her landlord for personal injuries

---

[2] On brief, Isbell asserts that, in his proposed amended motion for judgment, he stated a claim for negligence per se and that the circuit court overlooked that theory of liability. Irrespective of whether Isbell stated such a claim in his proposed amended motion for judgment, the circuit court did not decide whether a landlord's breach of the statutory duties imposed by the Act can form the basis of a common law claim for negligence per se, nor is that issue before us in this appeal.

4

resulting from the landlord's violation of obligations and duties imposed by the Act is a matter of first impression before this Court. As the circuit court recognized, it is well-settled in Virginia that, under the common law, a landlord has "no duty to maintain in a safe condition any part of the leased premises that [is] under [a tenant's] exclusive control." Paytan, 208 Va. at 26, 155 S.E.2d at 37 (citing Oliver v. Cashin, 192 Va. 540, 65 S.E.2d 571 (1951)). Neither does any contractual duty undertaken by a landlord to repair leased premises under a tenant's control render the landlord liable in tort for injuries sustained by the tenant as a result of the landlord's breach of a covenant to make such repairs. Id. at 27, 155 S.E.2d at 38 (citing Caudill, 185 Va. 233, 38 S.E.2d 465); see also Luedtke v. Phillips, 190 Va. 207, 211, 56 S.E.2d 80, 82 (1949). In Caudill, this Court explained the common law rule in detail:

> Where the right of possession and enjoyment of the leased premises passes to the lessee, the cases are practically agreed that, in the absence of concealment or fraud by the landlord as to some defect in the premises, known to him and unknown to the tenant, the tenant takes the premises in whatever condition they may be in, thus assuming all risk of personal injury from defects therein. An agreement by the landlord to repair does not affect the rule, so far as concerns the landlord's liability for personal injuries, due to defects in the premises leased for a private purpose, although the existence of

5

the defect is attributable to the failure to repair.

. . . .

Generally it is held that, where complete possession is surrendered to the lessee, no action of tort can be maintained against the lessor except for fraud or concealment, hence that no recovery can be had for personal injuries on account of the landlord's failure to repair, and that his covenant to repair renders him liable only to an action for the breach of covenant, in which recovery is limited to the costs of repairs and any loss of use suffered by the tenant after the lapse of a reasonable time from giving the notice in which to make repairs.

185 Va. at 239–41, 38 S.E.2d at 469 (citations and internal quotation marks omitted).

Isbell does not dispute these principles of the common law. Instead, he asserts that the Act abrogated the common law and provided a statutory cause of action in tort allowing a tenant to recover damages for personal injuries sustained as a result of a landlord's violation of the statutory duties to "[c]omply with the requirements of applicable building and housing codes materially affecting health and safety" and to "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." Code § 55-248.13(A)(1)-(2). Isbell contends that the language used in Code §§ 55-248.40, -248.21, and -248.4 signals the General Assembly's

6

intent to abrogate the common law and create this statutory cause of action.[3]  We do not agree.

---

[3] Code § 55-248.40 states:
> Any person adversely affected by an act or omission prohibited under [the Act] may institute an action for injunction and damages against the person responsible for such act or omission in the circuit court in the county or city in which such act or omission occurred.  If the court finds that the defendant was responsible for such act or omission, it shall enjoin the defendant from continuance of such practice, and in its discretion award the plaintiff damages as herein provided.

Code § 55-248.21 states:
> Except as provided in this chapter, if there is a material noncompliance by the landlord with the rental agreement or a noncompliance with any provision of this chapter, materially affecting health and safety, the tenant may serve a written notice on the landlord specifying the acts and omissions constituting the breach and stating that the rental agreement will terminate upon a date not less than 30 days after receipt of the notice if such breach is not remedied in 21 days.
> If the landlord commits a breach which is not remediable, the tenant may serve a written notice on the landlord specifying the acts and omissions constituting the breach, and stating that the rental agreement will terminate upon a date not less than 30 days after receipt of the notice.
> If the landlord has been served with a prior written notice which required the landlord to remedy a breach, and the landlord remedied such breach, where the landlord intentionally commits a subsequent breach of a like nature as the prior breach, the tenant may serve a written notice on the landlord specifying the acts and omissions constituting the subsequent breach, make reference to the prior breach of a like nature, and state that the rental agreement will

7

The General Assembly has proclaimed, "The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force . . . and be the rule of decision, except as altered by the General Assembly."  Code § 1-200.  When construing a statute in derogation of the common law, we apply several established principles.  "[A] statutory provision will not be held to change the common law unless the legislative intent to do

terminate upon a date not less than 30 days after receipt of the notice.
    If the breach is remediable by repairs and the landlord adequately remedies the breach prior to the date specified in the notice, the rental agreement will not terminate.  The tenant may not terminate for a condition caused by the deliberate or negligent act or omission of the tenant, a member of his family or other person on the premises with his consent whether known by the tenant or not.  In addition, the tenant may recover damages and obtain injunctive relief for noncompliance by the landlord with the provisions of the rental agreement or of this chapter.  The tenant shall be entitled to recover reasonable attorneys' fees unless the landlord proves by a preponderance of the evidence that the landlord's actions were reasonable under the circumstances. If the rental agreement is terminated due to the landlord's noncompliance, the landlord shall return the security deposit in accordance with § 55-248.15:1.

    Code § 55-248.4 defines "[a]ction" as a "recoupment, counterclaim, set off, or other civil suit and any other proceeding in which rights are determined, including without limitation actions for possession, rent, unlawful detainer, unlawful entry, and distress for rent."

8

so is plainly manifested." Herndon v. St. Mary's Hosp., Inc., 266 Va. 472, 476, 587 S.E.2d 567, 569 (2003); accord Schwartz v. Brownlee, 253 Va. 159, 166, 482 S.E.2d 827, 831 (1997) (citing Wackwitz v. Roy, 244 Va. 60, 65, 418 S.E.2d 861, 864 (1992)); Boyd v. Commonwealth, 236 Va. 346, 349, 374 S.E.2d 301, 302 (1988) (citing Hannabass v. Ryan, 164 Va. 519, 525, 180 S.E. 416, 418 (1935)).  "Statutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms."  Chesapeake & Ohio Ry. Co. v. Kinzer, 206 Va. 175, 181, 142 S.E.2d 514, 518 (1965); accord Blake Constr. Co. v. Alley, 233 Va. 31, 34, 353 S.E.2d 724, 726 (1987); Hyman v. Glover, 232 Va. 140, 143, 348 S.E.2d 269, 271 (1986).  Accordingly, "[a] statutory change in the common law is limited to that which is expressly stated in the statute or necessarily implied by its language because there is a presumption that no change was intended."  Mitchem v. Counts, 259 Va. 179, 186, 523 S.E.2d 246, 250 (2000); accord Couplin v. Payne, 270 Va. 129, 136, 613 S.E.2d 592, 595 (2005); Boyd, 236 Va. at 349, 374 S.E.2d at 302; Strother v. Lynchburg Trust & Sav. Bank, 155 Va. 826, 833, 156 S.E. 426, 428 (1931).  "When an enactment does not encompass the entire subject covered by the common law, it abrogates the common-law rule only to

9

the extent that its terms are directly and irreconcilably opposed to the rule."  Boyd, 236 Va. at 349, 374 S.E.2d at 302; accord Couplin, 270 Va. at 136, 613 S.E.2d at 595; Mitchem, 259 Va. at 186–87, 523 S.E.2d at 250.

In Wicks v. City of Charlottesville, 215 Va. 274, 208 S.E.2d 752 (1974), we explained the reason for applying these principles:

> [The General Assembly] is presumed to have known and to have had the common law in mind in the enactment of a statute.  The statute must therefore be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law.

Id. at 276, 208 S.E.2d at 755; accord Keister's Adm'r v. Keister's Ex'rs, 123 Va. 157, 162, 96 S.E. 315, 317 (1918).

Employing these established canons of construction, we conclude that the General Assembly did not intend to abrogate the common law rule that a landlord is not liable in tort for a tenant's personal injuries sustained as a result of the landlord's failure to repair premises under the tenant's possession and control.  Nowhere in the Act is there express language creating a cause of action in tort for a landlord's breach of duties imposed by the Act.  Nor is such a cause of action necessarily implied by the Act's language.

10

Instead, a close examination of the Act as a whole reveals an integrated statutory scheme governing contractual relationships between landlords and tenants. Indeed, the General Assembly expressly stated that the Act "shall apply to all rental agreements entered into on or after July 1, 1974, which are not" otherwise specifically exempted from its reach. Code § 55-248.3:1 (emphasis added). As the Act defines them, "[r]ental agreement[s]" are "agreements, written or oral, . . . embodying the terms and conditions concerning the use and occupancy of a dwelling unit and premises." Code § 55-248.4.

In furtherance of its purpose "to simplify, clarify, modernize and revise the law governing the rental of dwelling units and the rights and obligations of landlords and tenants," Code § 55-248.3, the Act imposes certain duties on landlords. The provisions of Code § 55-248.13(A) require a landlord to "1. Comply with the requirements of applicable building and housing codes materially affecting health and safety; [and] 2. Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." At common law, a landlord would not have these responsibilities unless the landlord expressly covenanted to assume them in an agreement with the tenant. See Luedtke, 190 Va. at 211, 56 S.E.2d at 82

11

(a landlord was under no implied covenant to repair the demised premises).  Nevertheless, we do not make the inference urged by Isbell that the imposition of these statutory duties on a landlord necessarily gives rise to liability in tort for the landlord's failure to fulfill them.

We find further evidence that the General Assembly did not intend to provide relief in the Act beyond that normally available for a breach of contract when we compare the Act's provisions concerning a landlord's duties to those set forth in the Uniform Residential Landlord and Tenant Act (URLTA).  The language appearing in URLTA § 2.104(a) is identical to the terms of Code § 55-248.13(A) at issue here.  The drafters' comment accompanying URLTA § 2.104 states, "Generally duties of repair and maintenance of the dwelling unit and the premises are imposed upon the landlord by this section."  It continues, "This section follows the warranty of habitability doctrine now recognized" in several jurisdictions.  URLTA § 2.104 cmt.; see also Hinson v. Delis, 102 Cal. Rptr. 661 (Cal. Ct. App. 1972), overruled on other grounds by Knight v. Hallsthammar, 623 P.2d 268, 273 n.7 (Cal. 1981); Javins v. First Nat'l Realty Corp., 428 F.2d 1071 (D.C. Cir. 1970); Lemle v. Breeden, 462 P.2d 470 (Haw. 1969); Jack Spring,

12

Inc. v. Little, 280 N.E.2d 208 (Ill. 1972); Rome v. Walker, 196 N.W.2d 850 (Mich. Ct. App. 1972); Kline v. Burns, 276 A.2d 248 (N.H. 1971); Pines v. Perssion, 111 N.W.2d 409 (Wis. 1961). In these cases cited by the drafters of URLTA, the relief afforded to the respective tenants was consistent with our common law regarding the extent of a landlord's liability for breach of a covenant to repair leased premises. Compare Kline, 276 A.2d at 252 ("If a material or substantial breach of the implied warranty of habitability is found, the measure of the tenant's damages is the difference between the agreed rent and the fair rental value of the premises as they were during their occupancy by the tenant in the unsafe, unsanitary or unfit condition."), with Caudill, 185 Va. at 240-41, 38 S.E.2d at 469 (holding a landlord's "covenant to repair renders him liable only to an action for the breach of covenant, in which recovery is limited to the costs of repairs and any loss of use suffered by the tenant after the lapse of a reasonable time from giving the notice in which to make repairs").

Neither do the provisions of the Act upon which Isbell relies expressly state or necessarily imply a legislative intent to provide damages for a tenant's personal injuries sustained as a result of a landlord's noncompliance with

13

the duties imposed by Code § 55-248.13(A)(1)-(2).  Rather,
the remedies provided in the Act for a landlord's violation
of these statutory obligations are more akin to those
available in an action for breach of contract than the type
of damages recoverable in an action in tort for personal
injury.

Pursuant to Code § 55-248.21, a tenant's remedy for a
landlord's "material noncompliance . . . with the rental
agreement or a noncompliance with any provision of [the
Act], materially affecting health and safety," is
termination of the rental agreement after providing written
notice to the landlord and an opportunity for the landlord
to correct the breach.  A tenant may also recover damages
and obtain injunctive relief.[4]  The focus of this section is
clearly to provide a tenant with the right to terminate the
rental agreement if a landlord fails to comply "with any
provision . . . materially affecting health and safety."
That remedy, along with damages and injunctive relief, is
available exclusively to "the tenant."  The Act
specifically provides that the term "[t]enant" does "not
include . . . an authorized occupant, . . . a guest or
invitee, or . . . any person who guarantees or cosigns the

_____

[4] Alternatively, a tenant may file an action for
assertion and pay the amount of rent required under the
rental agreement into court.  Code § 55-248.27.

14

payment of the financial obligations of a rental agreement but has no right to occupy a dwelling unit."  Code § 55-48.4.  That the General Assembly limited the availability of damages under Code § 55-248.21 to persons in contractual privity with landlords, i.e., tenants, demonstrates that it intended to provide for consequential damages flowing from a breach of contract and not damages for personal injury caused by tortious conduct.  To conclude otherwise would mean that a tenant could obtain damages for personal injury, but a person whose recovery for a landlord's tortious acts or omissions is, ordinarily, derivative of the tenant's could not do so.  See Oliver, 192 Va. at 543, 65 S.E.2d at 572 ("The duties and liabilities of the landlord to the guests and invitees of the tenant, with respect to personal injuries, are ordinarily the same as those which the landlord owes to the tenant.  They stand in the tenant's shoes.")  If the damages provided for in Code § 55-248.21 lie only in an action for breach of contract, then limiting their availability to tenants, because they are in privity with landlords, is entirely consistent with our jurisprudence in the area of damages.[5]  See

---

[5] The Act also imposes certain duties on tenants, including the responsibility to "[c]omply with all obligations primarily imposed upon tenants by applicable provisions of building and housing codes materially

15

<u>Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.</u>,

236 Va. 419, 425, 374 S.E.2d 55, 58 (1988).

While Code § 55-248.40, the other section of the Act that Isbell chiefly cites in support of his claim of a statutory cause of action, does not limit its applicability specifically to tenants, a careful reading of its language nonetheless discloses a legislative intent to provide contract remedies, not a recovery in tort. The General Assembly's prescribed mode for awarding relief under this section is inconsistent with Isbell's position for at least two reasons. First, the provisions of Code § 55-248.40 commit the factual determination whether a defendant was responsible for an act or omission prohibited by the Act entirely to "the court," providing no role to a jury. Such an assignment of the fact-finding duty solely to the court is entirely appropriate in an equitable claim, but at odds

affecting health and safety;" and to "[k]eep that part of the premises he occupies and uses as clean and safe as the condition of the premises permit." Code § 55-248.16(A)(1)-(2). A landlord's remedies for a tenant's "material noncompliance . . . with the rental agreement or a violation of § 55-248.16 materially affecting health and safety" include termination of the rental agreement as well as damages and injunctive relief. Code § 55-248.31(A) and (G). Given the similarity between these provisions and Code §§ 55-248.13(A)(1)-(2) and -248.21, if we adopted Isbell's position in this case, a landlord, by implication, would have a statutory cause of action in tort for personal injuries sustained as a result of a tenant's failure to fulfill the duties imposed by the Act.

16

with the role of the court vis-à-vis the jury in an action at law for damages, such as an action for personal injury. See Bethel Inv. Co. v. City of Hampton, 272 Va. 765, 769, 636 S.E.2d 466, 469 (2006) (The right to a jury trial under Va. Const., art. I, § 11 "is not applicable to proceedings in which there was no right to jury trial when the Constitution was adopted, such as ordinary suits in chancery, but it is clearly applicable to common-law actions seeking to recover damages.") (citing Stanardsville Vol. Fire Co. v. Berry, 229 Va. 578, 583, 331 S.E.2d 466, 469 (1985)); see also Rule 3:21(a). Second, to allow the question whether the tenant may recover damages for his or her personal injuries to turn on the court's discretion would be inconsistent with the recognized principle of tort law that "a plaintiff is entitled to compensation sufficient to make him whole." Schickling v. Aspinall, 235 Va. 472, 474–75, 369 S.E.2d 172, 174 (1988) (emphasis added).[6]

Furthermore, the provision in Code § 55-248.40 allowing a court to enjoin a defendant from continuing an act or omission prohibited by the Act and to award damages

---

[6] We also find unpersuasive Isbell's argument that the portion of the Act's definition of the term "[a]ction" referring to "other civil suit and any other proceeding in which rights are determined," Code § 55-248.4, contemplates a tort action for personal injury.

17

in its discretion conforms to the longstanding authority of chancery courts to award damages incident to an award of equitable relief.  See, e.g., Advanced Marine Enters., Inc. v. PRC Inc., 256 Va. 106, 122, 501 S.E.2d 148, 157 (1998); White v. White, 181 Va. 162, 169, 24 S.E.2d 448, 451 (1943).  Notably, Code § 55-248.40 also limits the damages that a court can award to "damages as herein provided." Thus, unless another part of the Act provides for damages in tort, a court has no authority to award that type of relief.  As we have already stated, we find no such provision.

CONCLUSION

Reading the Act as a whole, we conclude that the General Assembly did not plainly manifest an intention, either through express language or by necessary implication, to abrogate the common law and make a landlord liable in tort for a tenant's personal injuries sustained on leased premises within the tenant's control and possession as a result of the landlord's breach of duties imposed by the Act.  Instead, the Act provides a comprehensive scheme of landlords' and tenants' contractual rights and remedies.  Therefore, we will affirm the judgment of the circuit court.

Affirmed.

18