# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Cincinnati Insurance Cos.

v.

Katherine Grace Farrington et al.

November 16, 2010

Case No. 09-125

BY JUDGE EDWARD L. HOGSHIRE

On March 26, 2009, Plaintiff Cincinnati Insurance Companies filed a Complaint demanding damages from the Defendants, tenants of a property owned by its insured, CBS Rentals, L.L.C. Four of the Defendants, Katherine Grace Farrington, Emily Morgan Thompson, Sarah Elise West, and Adelaide Belk, were in possession of the property when it sustained damages due to a fire that occurred August 2, 2007. On September 29, 2009, the Defendants filed a Plea in Bar asking the Court to dismiss the action. The Court heard argument on the Defendants' Plea in Bar on December 4, 2009. On March 31, 2010, Cincinnati Insurance Companies filed a First Amended Complaint for the purposes of including one of the Defendants' mothers as a named Defendant and to request attorney's fees. The Defendants filed their Plea in Bar to the original Complaint, not to the First Amended Complaint; however, the First Amended Complaint modifies the original only to the extent that it includes Farrington's mother as a named Defendant and alleges the Defendants' liability for attorney's

fees. Having reviewed counsels' pleadings and briefs, the Court sustains in part and overrules in part the Plea in Bar for the reasons set forth below.

## Statement of the Facts

For the purposes of ruling on the Defendants' Plea in Bar, the facts have been derived from the Pleadings and attached Exhibits and appear to be uncontested.

On August 2, 2007, a fire damaged the property located at 126 13th Street, N.W., Apartment 1 (the "Property"). CBS Rentals, L.L.C. ("CBS"), a Virginia LLC with its principal place of business located at 120 13th Street, N.W., in Charlottesville, owned the Property. At the time the fire occurred, Katherine Grace Farrington ("Farrington"), Emily Morgan Thompson, Sarah Elise West, and Adelaide Belk (collectively, "Defendants") had possession of the property under their lease agreement (the "Lease Agreement"), dated October 2, 2006, with the tenancy commencing June 10, 2007, and terminating June 5, 2008.

At the time of the fire, CBS maintained an insurance policy (the "Policy") issued by Cincinnati Insurance Companies ("Plaintiff" as Subrogee for CBS), an insurance company authorized to do business in Virginia. The damages to the Property totaled $15,944.75. (Cincinnati Ins. Cos. Statement of Loss, Aug. 2, 2007.) In April 2008, the Plaintiff paid CBS $14,944.75 under the Policy, the amount above CBS's deductible of $1,000.00. (*Id.*) Under the Policy's terms, CBS assigned all of the rights, title, and interest in and to the claim against the Defendants to the Plaintiff. (First Am. Compl. ¶ 21, March 31, 2010.) The Policy was not included in the pleadings, but the parties do not appear to contest the Plaintiff's ability to recover as subrogee of its insured. Plaintiff now seeks recovery from the Defendants based on the subrogation rights under the Policy and the Lease Agreement.

The Complaint alleges that one of the tenants left the stove dial in the "on position," and that Farrington and her mother, Mrs. Katherine White Farrington ("Mrs. Farrington"), subsequently placed combustible items on the stove top, which ignited when power was restored to the Property. (First Am. Compl. ¶¶ 13, 16.) Plaintiff alleges that these actions resulted in a fire that breached the covenants of the lease. (*Id.*) The Plaintiff also alleges that Farrington and/or Mrs. Farrington were negligent in placing combustible items on the stove top and that, because of their negligence, the Property sustained the aforementioned amount of damages. (*Id.* at ¶ 15.) The Lease Agreement specifies that all parties to the agreement are jointly and severally liable for all the terms, covenants, and conditions of the lease. (Lease Agrmt. 1, Oct. 2, 2006.) Under the "Resident Covenants" portion of the Lease Agreement, the Defendants agreed not to use or occupy the leased premises in a manner "which will cause a safety hazard" or in a

way "which will cause or be likely to cause structural damage to the leased premises." (*Id.* at 3.) Further, the Defendants agreed that any damage to the property would be charged to them. (*Id.*)

The Defendants were required to pay a deposit (the "Deposit") of $2,350.00 under the terms of the Lease Agreement "as a Damage Deposit and to insure the performance by the Resident[s] of all the terms of [the] lease." (*Id.*) The Deposit covered "all repairs . . . normal wear and tear excepted, as necessitated by the Resident's occupancy of the premises." (*Id.*) The first page of the Lease Agreement states:

> After deductions for these repairs . . . the Landlord will return one check to[] Emily Thompson within forty five (45) days following the end of this lease term, the balance of the damage deposit, plus any accrued interest as required by law, together with an itemized statement of such amounts and any damages to the premises.

(*Id.*) On June 26, 2008, the Plaintiff advised the Defendants of the Plaintiff's claim as subrogee by a letter sent to Bill and Kathy Farrington, Defendant Farrington's parents, residing at Farrington's permanent address. (Ex. A to Opp. to Defs.' Plea in Bar, Nov. 20, 2009.) On July 3, 2008, Defendant Thompson received a check from CBS in the amount of $1,850.53, the remaining portion of the Defendants' Deposit. (Ex. D to Defs.' Plea in Bar, Sept. 29, 2009.)

The Defendants in their Plea in Bar argue that the Lease Agreement controls and that CBS has waived any right to recover from the Defendants by returning a portion of the Defendants' Deposit (Plea in Bar ¶ 12); therefore, the Defendants argue that the Plaintiff as subrogee cannot make a contractual claim when its insured has waived that claim. (*Id.* at ¶ 13.) The Plaintiff, however, argues that the damages arising out of the August 2, 2007, fire should properly be classified as property damage, resulting from a breach of a general duty of care under tort law, and, therefore, the Plaintiff should be able to recover regardless of the return of the security deposit. (Opp. to Defs.' Plea in Bar 3, 5.) The Plaintiff further alleges that the Defendants should be held jointly and severally liable for any damages to the property, as set forth in the Lease Agreement. (First Am. Compl. ¶ 10.)

### Questions Presented

1. Whether the landlord, CBS Rentals, L.L.C., released Defendants from claims for damage to the rental property by returning a portion of the security deposit.

2. Whether the Virginia Residential Landlord Tenant Act precludes a common law action for negligence against Tenants.

## Standard of Review

A plea in bar reduces litigation to a single issue, which bars the plaintiff's recovery if proven. *Cooper Indus. v. Melendez,* 260 Va. 578, 594, 537 S.E.2d 580, 585 (2000). For a plea in bar, the moving party bears the burden of proving issues of fact. *Whitley v. Commonwealth,* 260 Va. 482, 493, 538 S.E.2d 296, 302 (2000).

## Analysis

### A. *Rights of the Subrogated Insurer under the Lease Agreement*

As an initial matter, Plaintiff is a subrogated insurer, and, as such, its rights can rise no higher than the rights of its insured. *Nationwide Mutual Ins. Co. v. Minnifield,* 213 Va. 797, 800, 196 S.E.2d 75, 78 (1973). Subrogation is "the principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Black's Law Dictionary* 684-85 (3d pocket ed. 2006). Under the Code of Virginia, an insurer operating under a contract of insurance with its insured, which provides that the insurer may become subrogated to the rights of the insured, may enforce third-party liabilities to the insured. Va. Code § 38.2-207. Therefore, when the subrogee steps into the shoes of an insured, it can have no greater rights than its insured. *Peerless Ins. Co. v. City of Fairfax,* 274 Va. 236, 247, 645 S.E.2d 478, 484 (2007) (*citing Reynolds Metal Co. v. Smith,* 218 Va. 881, 883–84, 241 S.E.2d 794, 796 (1978) (substitution as to both rights and remedies as a crucial characteristic of subrogation).

Plaintiff brings its claim against the Defendants as the subrogee of CBS, landlord and party to the Lease Agreement, to recover insurance proceeds paid to CBS as a result of a fire at the Property owned by CBS and rented by Defendants. (First Am. Compl. ¶ 17.) The Policy in effect between Plaintiff and CBS provided that Plaintiff "would pay on behalf of its insured the amounts necessary to cover the damages caused by the fire." (*Id.*) As such, the insurance policy insured CBS for any property damages, including those resulting from fires caused by tenants or other third parties. Plaintiff was not insuring the underlying contract itself (e.g., that tenants pay rent and vacate the premises on time), but insuring property damages caused by tortious activities of others. Therefore, Plaintiff is limited to the claims for damages to the property that could be brought by CBS.

## B. *Subrogee's Claims Based on the Lease Agreement*

Plaintiff claims that the negligence of Defendants breached the terms of the Lease Agreement and that Defendants are jointly and severally liable for any resulting damages. (First Am. Compl. ¶ 16.) Plaintiff, as subrogee, has only the claims available to CBS, the insured. The Defendants argue that the Lease Agreement is governed by the Virginia Residential Landlord Tenant Act (VRLTA) and that CBS waived any claims under the lease when it returned most of the security deposit to the Defendants after the lease ended. (Defs.' Plea in Bar ¶¶ 11–12.)

The VRLTA, adopted in 1974, is Virginia's embodiment of the Uniform Residential Landlord Tenant Act. *Marple v. Papermill Park Corp.*, 30 Va. Cir. 154 (Warren 1993). The Act was intended to "simplify, clarify, modernize, and revise the law governing the rental of dwelling units and the rights and obligations of landlords and tenants . . . and to establish a single body of law relating to landlord and tenant relations throughout the Commonwealth." Va. Code § 55-248.3. According to the Supreme Court of Virginia, "a close examination of the Act as a whole reveals an integrated statutory scheme governing *contractual relationships* between landlords and tenants," specifically the rental agreements between landlords and tenants. *Isbell v. Commercial Investment Assocs., Inc.*, 273 Va. 605, 614, 644 S.E.2d 72, 76 (2007) (emphasis in original).

In *Isbell*, 273 Va. at 609, 644 S.E.2d at 73, the Supreme Court was asked whether the VRLTA created statutory causes of actions for injuries caused by noncompliance with the Act that were not available in traditional tort law. The Court considered the intentions of the General Assembly and the purposes of the Act and held that "the General Assembly did not intend to provide relief in the Act beyond that normally available for a breach of contract." *Id.* at 615, 644 S.E.2d 72, 76. Therefore, the remedies available for a party's breaches of duties specifically covenanted for in the landlord-tenant agreement are those available in the agreement and in the VRLTA, not those recoverable in tort. *Id.* at 617, 644 S.E.2d 72, 77.

The Lease Agreement between CBS and Defendants provided for various remedies in case of damage to the property caused by the tenants. Under the section entitled "Cost of Repairs," CBS could bill Defendants for the cost of repairs necessary due to their negligence or a breach of the lease, due on the next monthly rent due date. (Lease Agrmt. 1.) Under the section entitled "Resident Covenants," the tenants promised to not engage in negligent conduct and to not use the premises in a manner "which will cause a safety hazard and/or an increase in Lessor's casualty insurance premiums" or "which will cause or be likely to cause structural damage to the leased premises or any part thereof." (Lease Agrmt. 3.) Importantly, the Lease Agreement contained a section on "Fire and Casualty Damage," which provided remedies in the event of a fire due to the tenants' negligence:

> If . . . the damage to the property by fire or otherwise was caused by the deliberate or negligent act or inaction of the Resident . . . no option to terminate by Resident shall exist and Resident shall be liable for the rent due on the unexpired term of this lease, without abatement, unless Landlord elects to terminate this lease, a right the Landlord hereby reserves in such contingency.

(Lease Agrmt. 6.) CBS drafted this Lease Agreement and specifically included remedies in the event of a fire caused by Defendants' negligence. CBS instead chose to refund Defendants' security deposit in accordance with the VRLTA, subtracting from the deposit costs for miscellaneous repairs as well as for replacement carpet in "Bedroom 4" in August 2007. (Ex. C to Def.'s Resp. to Pl.'s Interrog., July 3, 2008.)

In addition to remedies available under the Lease Agreement, the VRLTA provides remedies for both landlords and tenants in the case of fire or casualty damage: the parties may terminate the rental agreement and account for damages using prepaid rent and the security deposit plus accrued interest within forty-five days of the casualty, providing written notice within an additional fifteen days if the amount of repairs exceeds the security deposit. Va. Code § 55-248.24. CBS chose not to avail itself of this remedy and instead allowed the tenants to remain in possession and returned the security deposit after the termination of the lease. The security deposit plays an important role in this provision and in the VRLTA as a whole, ensuring that landlords have funds available from which to draw when repairing damage caused by tenants and acting as the final step in the termination of the rental relationship. *See* Va. Code § 55-248.15:1. When the landlord itemizes deductions from the security deposit and returns any remaining amount to tenants, he is signaling to the tenants that both parties' responsibilities under the rental agreement have been satisfied.

In sum, CBS had multiple contract remedies available in the event the Defendants breached the lease agreement by negligently starting a fire. Under the VRLTA, CBS could have terminated the rental agreement, made an accounting of the security deposit and pre-paid rent, and notified Defendants of any excess damages owed. Va. Code § 55-248.24; *see also Isbell*, 273 Va. at 616, 644 S.E.2d 72, 77. CBS also had remedies available in the Lease Agreement it drafted, including terminating the lease and asking for the full amount of rent due on the unexpired lease or charging the cost of repair with the next month's rent; therefore, when CBS chose not to avail itself of the remedies provided for in the Lease Agreement and the VRLTA but instead returned the Defendants' security deposits minus, *inter alia*, the replacement cost for one of the fire-damaged carpets, it waived any further claims based on breaches of the Lease Agreement.

C. *Common Law Negligence Claim*

In addition to Plaintiff's claim based on the breach of the Lease Agreement, Plaintiff also claims that one of the Defendants or a guest turned on the stove and that Defendants Farrington and Mrs. Farrington negligently placed combustible items on the stove, causing a fire that resulted in damages. (First Am. Compl. ¶¶ 13–15.) Defendants argue that the return of the security deposit released them from any and all claims under the Lease Agreement and that the only action possible is solely contractual in nature, governed by the VRLTA. (Defs,' Plea in Bar ¶¶ 11–12.) However, this is a common law negligence claim for property damage found in traditional tort law, and, as such, common law tort principles control this claim.

As noted above, the VRLTA was adopted in order to modernize and clarify the laws governing rental units and the obligations of landlords and tenants. Under Virginia law, the adoption of a statute does not operate to alter or abdicate existing common law unless such statute states a clear intention to do so. *People's Security Life Ins. Co. v. Arrington*, 243 Va. 89, 92, 412 S.E.2d 705, 707 (1992). Had the Virginia General Assembly intended to eliminate all common law negligence claims arising between tenants and landlords, it would have made such desire clear in the statement of purposes. In fact, the Supreme Court of Virginia explicitly held that VRLTA does not abrogate common law negligence tort claims. *Isbell*, 273 Va. at 609, 644 S.E.2d at 73.

Since the passage of this Act, Virginia courts have considered and upheld several cases involving common law claims for personal injuries by tenants against their landlords. In *FAD, Ltd. Partnership v. Feagley*, the Supreme Court of Virginia held that a landlord has no duty to remove ice from a common porch and made such a determination strictly on a common law basis, without reference to VRLTA. 237 Va. 413, 415, 377 S.E.2d 437, 438 (1989). Regarding the maintenance of common areas, the Circuit Courts for Winchester, the City of Richmond, and the City of Roanoke have all held that the VRLTA does not preclude negligence actions for violations of common law duties. *Marple*, 30 Va. Cir. 154; *Thompson v. Springer Manor Apartments*, 46 Va. Cir. 408 (Richmond 1998); *Jeter v. ARK Properties, L.L.C.*, 64 Va. Cir. 287 (Roanoke 2004). Further, this Court in *Larsen v. Cannon/Hearthwood, L.P.*, held that the "VRLTA is not the exclusive source of remedies" and allowed a former tenant to bring an action for personal injuries allegedly due to the negligence of his former landlord. 65 Va. Cir. 505, 508 (Charlottesville 2004).

However, a landlord or tenant may only bring a common law negligence claim where there is an independent duty owed by the alleged tortfeasor. The Supreme Court has made clear that the law of torts is designed to compensate for losses suffered because of "a breach of some

duty imposed by law to protect the broad interests of social policy," not for those "losses suffered as a result of a breach of duties assumed only by agreement." *Abi-Najm v. Concord Condominium, L.L.C.*, 280 Va. 350, 699 S.E.2d 483 (2010) (*citing Kamlar Corp. v. Haley*, 224 Va. 669, 706, 299 S.E.2d 514, 517 (1983)). Where a victim can show breaches of both contract and tort duties, the "duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998) (*citing Foreign Mission Bd. v. Wade*, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991)); *Spence v. Norfolk & W. RR.*, 92 Va. 102, 116, 22 S.E.815, 818 (1895)). Therefore, where a contract exists between parties and one party brings an action in tort, that plaintiff must allege a common law duty for the protection of persons or property that exists in tort law, independent of any duty owed solely by virtue of the contract. In short, a rental agreement is irrelevant to any suit for property damage caused by negligence.

In the case at hand, the Plaintiff alleges that at least one of the Defendants negligently left the stove in the "on position," that Defendants Farrington and Mrs. Farrington negligently left combustible items on top of the apartment stove, and that these negligent acts caused a fire that resulted in damage to CBS's property. To act with reasonable care to prevent a fire on another person's property is clearly an independent duty in tort that Defendants owed to the owners of the property, regardless of any contract between them. This is not a case of pure economic loss, where a lack of privity would bar tort recovery. *See Sensenbrenner v. Rust, Orling, & Neale Architects, Inc.*, 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988) (pure economic loss as diminution in value of the contracted for item due to faulty construction); *Blake Constr. Co. v. Alley*, 233 Va. 31, 35, 353 S.E.2d 724, 726 (1987) (pure economic loss as deterioration or loss of quality). Whether Defendants acted with reasonable care is an issue for the decider of fact.

Furthermore, traditional tort theories of liability will be applied at trial. Plaintiff seeks to assert joint and several liability because the Lease Agreement between the Defendants and CBS provided for joint and several liability. (First Am. Compl. ¶ 9.) However, a claim for negligence is independent of any contractual duties between the parties, as stated above. Therefore, the liability of a tortfeasor is governed by Virginia common law, and only those whose negligence contributed to injury may be found liable for any damages.

### Conclusion

For the reasons stated above, the Plea in Bar is therefore sustained in part and overruled in part. The contract claim is dismissed with prejudice, but the negligence claim remains.