COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, O'Brien and Senior Judge Frank
Argued by teleconference

PUBLISHED

PAUL ANTHONY CHENEVERT

OPINION BY
v.       Record No. 0028-19-1          JUDGE GLEN A. HUFF
APRIL 21, 2020

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
John W. Brown, Judge

Erik A. Mussoni, Assistant Public Defender, for appellant.

Mason D. Williams, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Paul Anthony Chenevert ("appellant") appeals his convictions for aggravated sexual

battery and forcible sodomy of a minor. Judgment was entered on the jury's verdict finding

appellant guilty of two counts of forcible sodomy of a minor, in violation of Code § 18.2-67.1,

and two counts of aggravated sexual battery, in violation of Code § 18.2-67.3. In accordance

with the jury's verdict, the trial court sentenced appellant to imprisonment for two life sentences

plus twenty years. Appellant claims the trial court erred by admitting both a letter the victim,

T.E., wrote to her mother and drawings T.E. made during a forensic interview because the letter

and drawings were inadmissible hearsay.

Although the evidence was hearsay, the trial court correctly held that the letter and

drawings were admissible under the hearsay exception provided by Code § 19.2-268.3, which

permits the admission of certain hearsay statements of child victims of certain crimes.

Therefore, this Court affirms.

## I. BACKGROUND[1]

On appeal, this Court "consider[s] the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." Williams v. Commonwealth, 49 Va. App. 439, 442 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672 (2004)). So viewed, the evidence is as follows:

Appellant lived with T.E. and her mother. One evening, T.E., who was eight years old at the time, gave her mother a letter that said: "Mom you now how Dady comes in my room he makes me kiss his Boo Boo. Oh and Dady told me not to tell you." During the few months before T.E. gave her mother the letter, T.E.'s mother had found appellant sleeping in T.E.'s bed numerous times. Because of the letter and T.E.'s mother's concerns at finding appellant sleeping in T.E.'s bed, T.E. underwent a forensic interview at the Children's Hospital of the King's Daughters. During the interview, T.E. frequently wrote or drew on paper in response to the interviewer's questions about appellant's conduct.

Before trial, the Commonwealth filed a motion, pursuant to Code § 19.2-268.3, to admit the letter T.E. wrote to her mother, the drawings she made during the interview, and a video of the forensic interview itself. After a hearing, the trial court granted the Commonwealth's motion.

---

[1] Part of the

> record was sealed by the circuit court. Nevertheless, this appeal necessitates unsealing relevant portions of the record in order to resolve the issues raised by the appellant. Consequently, "[t]o the extent that we mention facts found only in the sealed record, we unseal only those specific facts, finding them relevant to our decision in this case. The remainder of the previously sealed record remains sealed."

Church v. Commonwealth, 71 Va. App. 107, 112 n.1 (2019) (quoting Du v. Commonwealth, 292 Va. 555, 560 n.3 (2016)).

Appellant was tried by a jury. At the trial, T.E., the forensic interviewer, and appellant, among others, testified; the video, letter, and drawings were also admitted into evidence. At the time of her trial testimony T.E. was ten years old. Appellant was convicted and sentenced to two life sentences plus twenty years' imprisonment. This appeal followed.

## II. STANDARD OF REVIEW

"[T]he admissibility of evidence is within the discretion of the trial court and we will not reject the decision of the trial court unless we find an abuse of discretion." Alvarez Saucedo v. Commonwealth, 71 Va. App. 31, 44 (2019) (quoting Midkiff v. Commonwealth, 280 Va. 216, 219 (2010)). Nevertheless, this Court reviews *de novo* "any issue requiring statutory interpretation." Id. at 45.

## III. ANALYSIS

Appellant argues the trial court erred in admitting the drawings T.E. made during the forensic interview and the letter she wrote to her mother because they are hearsay and Code § 19.2-268.3 does not provide a hearsay exception for their admission.[2]

"[T]he common law generally prohibited hearsay evidence . . . ." Satterwhite v. Commonwealth, 56 Va. App. 557, 560 (2010). Hearsay is generally inadmissible unless it falls within an exception. Campos v. Commonwealth, 67 Va. App. 690, 704-05 (2017). "'The common law definition of hearsay evidence is "testimony in court . . . of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter."'" Id. at 704

---

[2] Appellant also argues that the video of the forensic interview was inadmissible hearsay and that Code § 19.2-268.3 did not permit its admission. He did not, however, assign error to the admission of the video. He specifically assigned error to admitting "a letter and drawings." Thus, he has waived any argument related to the video because he failed to assign error to it. Rule 5A:12(c)(1)(i) ("Only assignments of error assigned in the petition for appeal will be noticed by this Court.").

(quoting Commonwealth v. Swann, 290 Va. 194, 197 (2015)).  Code § 19.2-268.3 provides a

hearsay exception allowing the admission of out-of-court statements of victims of certain crimes

if that victim is under the age of thirteen at the time of the trial.  If the defendant is charged with

one or more of approximately thirty different listed crimes against children (including the

offenses at issue here), then the statement may be admitted, despite being hearsay, if two

requirements are met.  First, the trial court must find—considering seven, nonexclusive,

enumerated factors—that "sufficient indicia of reliability . . . render [the out-of-court statement

by the child] inherently trustworthy."  Code § 19.2-268.3(B)(1).  Second, the child must testify,

or the trial court must declare the child "unavailable as a witness" and "corroborative evidence"

of the "offense against [the child]" must exist.  Code § 19.2-268.3(B)(2).

T.E. testified, and appellant does not challenge the trial court's finding that the letter and

drawings have sufficient indicia of reliability.  Rather, he argues that neither the letter nor the

drawings are "statements" within the meaning of the statutory hearsay exception.[3]  He advances

two separate arguments in support of his claim that the letter and drawings are not statements.

First, he argues that the letter T.E. wrote to her mother was not a statement because the word

---

[3] The Commonwealth argues that appellant waived his claim that the trial court erred in admitting the letter and drawings.  It argues that his failure to cite specific cases addressing his argument is significant and should be treated as a waiver under Rule 5A:20(e).  However, Code § 19.2-268.3 was enacted in 2016.  There have been only five cases that cite the statute.  Two of those five are non-binding unpublished opinions, three (including two of the published opinions) only cite the statute in passing and do not analyze it, and not one of them addresses the issue appellant raises.  Appellant's argument is supported by citation to the statute and authorities detailing principles of statutory interpretation.  Thus, he has not defaulted his argument and this Court will address appellant's contentions on the merits.  See, e.g., Blankenship v. Commonwealth, 71 Va. App. 608, 623 n.2 (2020) (refusing to find an issue waived for failure to support the argument with authorities when the appellant cited the relevant statute and "developed his argument based on the statute's text" because Rule 5A:20 "does not require an appellant to manufacture case law where no analogous cases exist," noting that if this Court "were to read the Rule to implicitly require citation to case law where little or none exists, an appellant could never challenge a newly-enacted statute").

"statement" in Code § 19.2-268.3 only includes statements made during a forensic interview. Second, he argues that the drawings made by T.E. during the forensic interview are not "statements" within the meaning of the statute because "they were neither speech nor writing." This Court disagrees with both contentions.

## A. Letter

First, appellant argues that the term "statement" in Code § 19.2-268.3 should be narrowly interpreted to mean only statements made by a child victim during a forensic interview. He argues that because the statute is in derogation of the common law of evidence it should be strictly limited to the purpose for which it was enacted, which he claims was only to allow the admission of forensic interviews.

"When construing a statute in derogation of the common law, we apply several established principles. '[A] statutory provision will not be held to change the common law unless the legislative intent to do so is plainly manifested.'" Isbell v. Commercial Inv. Assocs., Inc., 273 Va. 605, 613 (2007) (quoting Herndon v. St. Mary's Hosp., Inc., 266 Va. 472, 476 (2003)). "Statutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms." Wade v. Commonwealth, 56 Va. App. 689, 693-94 (2010) (quoting Evans v. Evans, 280 Va. 76, 83 (2010)). Appellant claims that these principles require this Court to conclude that "statements" within the meaning of Code § 19.2-268.3 includes only statements made during a forensic interview. But nothing in the express terms of the statute suggests that limitation.

Like the rule of lenity, the doctrine that statutes in derogation of the common law are to be narrowly construed has no force when the text of the statute plainly demonstrates the intent of the legislature. Compare Boyd v. Commonwealth, 236 Va. 346, 349 (1988) ("The common law will not be considered as altered or changed by statute unless the legislative intent is *plainly*

*manifested*." (emphasis added)), with Rose v. Commonwealth, 53 Va. App. 505, 509 (2009) ("Although [this Court] construes statutes strictly in criminal cases, [it] will not apply 'an unreasonably restrictive interpretation of the statute' that would subvert the legislative intent expressed therein." (quoting Ansell v. Commonwealth, 219 Va. 759, 761 (1979))). Indeed, the bedrock principle of statutory interpretation in any context is that this Court must "must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." Smith v. Commonwealth, 66 Va. App. 382, 387 (2016) (quoting Scott v. Commonwealth, 58 Va. App. 35, 48 (2011)). "[T]he plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or strained construction." Williams v. Commonwealth, 57 Va. App. 341, 351 (2010) (quoting Turner v. Commonwealth, 226 Va. 456, 459 (1983)).

The statute at issue, by its plain language, applies broadly to all statements made by a child victim "describing any act directed against the child relating to" the offense against the child. The only limitations on the admissibility of these statements are the ones the General Assembly explicitly included in the statute: that the trial court find the statements "inherently trustworthy," and the child testifies or corroborating evidence be admitted when the child is "unavailable." This Court declines appellant's invitation to read any other limitation into the statute. Williams v. Commonwealth, 61 Va. App. 1, 7 (2012) ("Where bound by the plain meaning of the language used, we are not permitted 'to add or to subtract the words used in the statute.' This canon flows from the principle that '[w]e must . . . assume . . . the legislature chose, with care, the words it used when it enacted the relevant statute.'" (alterations in original) (quoting Coles v. Commonwealth, 44 Va. App. 549, 557-58 (2004))). Thus, the letter was admissible as a hearsay statement by a victim of a crime against a child despite the fact that it was not created during a forensic interview.

B.  Drawings

Appellant also argues that the drawings T.E. made during the forensic interview were inadmissible.  He argues that the drawings were not "statements" within the meaning of the Code § 19.2-268.3 hearsay exception.  What constitutes a "statement" is not defined by the statute.  Appellant relies on a dictionary definition of "statement" to argue that a drawing is not a statement because it is "neither speech nor writing."

This Court need not resort to a dictionary definition of "statement," however, to resolve appellant's claim.  A "statement" is defined by Rule of Evidence 2:801(a).  This Court assumes the General Assembly is aware of both the common law and its own enactments in the remainder of the Code of Virginia.  Moyer v. Commonwealth, 33 Va. App. 8, 35 (2000) (*en banc*) ("In interpreting a statute, '[t]he Code of Virginia constitutes a single body of law, and other sections can be looked to where the same phraseology is employed.'" (quoting Hart v. Commonwealth, 18 Va. App. 77, 79 (1994))); see also Isbell, 273 Va. at 614 ("[The General Assembly] is presumed to have known and to have had the common law in mind in the enactment of a statute." (alteration in original) (quoting Wicks v. City of Charlottesville, 215 Va. 274, 276 (1974))).  The term "statement" used in Code § 19.2-268.3, is an integral part of hearsay law both under the common law and the Rules of Evidence promulgated in 2012.  Thus, it is reasonable to conclude that the General Assembly intended the word "statement" in Code § 19.2-268.3 to carry the same meaning it carries in hearsay law generally.  See Isbell, 273 Va. at 614 ("The statute must therefore be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law." (quoting Wicks, 215 Va. at 276)).

Having concluded that the meaning of "statement" for the purposes of Code § 19.2-268.3 is the same as the meaning of "statement" in hearsay law generally, it follows that the drawings are statements and the trial court properly concluded they were admissible under the statute. According to Rule of Evidence 2:801(a), "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended as an assertion." Under this definition, the "drawings" qualify as statements for the purposes of the statute.

First, although the parties discuss the exhibits as "drawings," the "drawings" contain assertions written out with words, such as: "Dadey makes me kiss his Boo Boo" and "He makes me suck it." Those written words demonstrably make assertions and thus are statements within the meaning of the statute.

Second, to the extent the drawings are writings but not words, this Court still concludes that they are statements. Although the word "written" in the definition of "statement" can imply the use of words, cf. Writing, Black's Law Dictionary (7th ed. 1999) ("An intentional recording of words in a visual form . . . ."), the term "written" can also include marks intended to be communicative, see Write, Webster's Third New International Dictionary (2002) ("To draw or form by or as if by scoring or incising a surface."). When such marks assert a fact as true, the drawing is a written assertion.[4]

Just as with formulations of words, not every drawing will contain an assertion. See Brown v. Commonwealth, 25 Va. App. 171, 178 (1997) (*en banc*) ("In many instances, questions by an out-of-court declarant contain no assertion; they simply seek answers."). But those drawings that can be understood to make a factual claim, i.e. an assertion, can be a statement.

---

[4] Alternatively, if a drawing is intended to assert something as true, even if it were not a "written assertion," it would still be the record of "non-verbal conduct . . . intended as an assertion." The core of the test for whether something is a statement is whether it is intended to assert something. The form or media of recording the assertion is secondary to that question.

Cf. id. (holding that a question, can, in some circumstances, imply an assertion). For example, in this case, the drawing of two stick figures in a bed with lines from one figure's mouth to the other figure's midsection describes—in the context of the forensic interview in which it was drawn—how the assaults occurred.[5] Regardless of whether that is a "written assertion" or the record of a "nonverbal conduct . . . intended as an assertion," it fits the definition of a statement under the hearsay rules and, therefore, is admissible under Code § 19.2-268.3. Thus, the trial court did not err in admitting the drawings, and this Court affirms.

IV. CONCLUSION

Both the letter T.E. wrote to her mother and the drawings she made during the forensic interview were statements within the meaning of Code § 19.2-268.3. Thus, they were admissible under the statute once the trial court found them inherently trustworthy and T.E. testified. Accordingly, this Court affirms.

Affirmed.

---

[5] While children's drawn assertions may be imprecise, their assertions with words may be similarly imprecise, such as with T.E.'s use of the words "Boo Boo" for genitals. This further demonstrates how a drawing can be an assertion. When T.E. circled the genitals on anatomical drawings, in the context of the questions during the forensic interview, she was asserting that "these body parts are what I mean when I say, 'Boo Boo.'"

- 9 -