Present:  All the Justices

JIMMIE D. JENKINS, DIRECTOR, FAIRFAX
COUNTY DEPARTMENT OF PUBLIC WORKS
AND ENVIRONMENTAL SERVICES
                                        OPINION BY
 v.  Record No. 092272          JUSTICE CYNTHIA D. KINSER
                                        January 13, 2011
RAJ MEHRA, ET AL.

              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Marcus D. Williams, Judge

     This appeal challenges a trial court's judgment refusing to

hold a party in contempt after having found that the party

failed to abide by the terms of a prior order of the court

awarding injunctive relief.  We will dismiss the appeal because

this Court does not have jurisdiction to hear an appeal from the

refusal to find civil contempt.

                   RELEVANT FACTS AND PROCEEDINGS

     The events culminating in this appeal originated in 2005,

when the Fairfax County Department of Public Works and

Environmental Services (DPWES) issued notices to Raj Mehra and

Urvashi Mehra (the Mehras), advising them that certain

conditions on their real property located in Fairfax County

violated particular provisions of various Fairfax County

ordinances.[1]  The notices asserted violations in regard to a

---

     [1] The specific Fairfax County ordinances at issue were the
Chesapeake Bay Preservation Ordinance, Fairfax County Code
§ 118-3-2(f), and the Erosion and Sediment Control Ordinance,
Fairfax County Code § 104-1-2, in addition to Fairfax County
Public Facilities Manual § 6-0202.4.

drainage system on the real property and an impervious area greater than 18 percent of the total area of the Mehras' real property. In the notices, DPWES ordered the Mehras to take corrective actions to bring their real property into compliance with the relevant ordinances.

In September 2007, Jimmie D. Jenkins, the Director of DPWES, filed a complaint in the circuit court, alleging that the Mehras had neither complied with the notices of violation, requested reconsideration of DPWES' decision, nor appealed that decision. Jenkins requested the circuit court to declare that the Mehras' real property was in violation of the relevant Fairfax County ordinances and to issue injunctive relief requiring the Mehras to correct the violations on their real property. The circuit court entered a consent order in September 2008, which declared that the Mehras' real property was in violation of particular ordinances and directed the Mehras to bring their real property into compliance according to a schedule set forth in the consent order.

Because the Mehras did not comply fully with the terms of the consent order, Jenkins filed a motion for a rule to show cause why the Mehras should not be held in contempt for violating the order. The circuit court subsequently issued a rule to show cause, and at a hearing on that rule, the Mehras stipulated that they had not performed certain actions required

2

by the consent order.  Urvashi Mehra, however, testified that her husband had lost his job after the entry of the consent order and that a lack of funds prevented the Mehras from completing the work required by the order.  The circuit court held that "the terms of the Order of September 12, 2008 have not been met, but that the violation is not willful and therefore not contemptuous."  Accordingly, the circuit court dismissed the rule to show cause.

Jenkins filed a motion to reconsider, arguing, inter alia, that civil contempt does not require a finding of willfulness on the part of the offending party.  The circuit court denied the motion, again finding that the Mehras' noncompliance "was not in bad faith or willful disobedience" of the September 2008 order.

We awarded Jenkins this appeal, limited to two assignments of error.  In those assignments of error, Jenkins asserts that the circuit court erred in dismissing the rule to show cause on the basis that the Mehras did not willfully violate the consent order because civil contempt does not require a finding of willfulness.  Assuming arguendo that willfulness is relevant, Jenkins further contends the circuit court erred in refusing to hold the Mehras in contempt because their failure to comply with the consent order was "based on their own financial priorities."

In the order awarding the appeal, this Court, sua sponte, directed the parties to address "whether, under the facts of

this case, the appellant [Jenkins] has standing to appeal a judgment of the circuit court declining to hold a party in civil contempt and, if so, whether the jurisdiction for appeal is governed by Code § 19.2-318, requiring transfer of the appeal to the Court of Appeals of Virginia, or by Code § 8.01-670(A)(3) or (B)(3)." Jenkins v. Mehra, Record No. 092272 (March 16, 2010). We will address only the jurisdictional issue because it is dispositive.[2] See Parrish v. Jessee, 250 Va. 514, 520, 464 S.E.2d 141, 145 (1995) ("Jurisdiction is always a threshold issue.").

ANALYSIS

This Court's "jurisdiction is defined by the [C]onstitution of the state and the laws passed in pursuance thereof." Forbes v. State Council, 107 Va. 853, 855, 60 S.E. 81, 81 (1908); see also Va. Const. art. VI, § 1 (subject to certain limitations, the General Assembly has "the power to determine the . . . appellate jurisdiction of the courts of the Commonwealth"). The jurisdictional inquiry that we must undertake is twofold. We must first determine whether Code § 19.2-318 governs this

_____

[2] Subsequent to the parties' filing their respective briefs in this Court, the Mehras moved to dismiss the appeal on the basis that the matter is now moot because they have taken the required actions to comply with the consent order. In response, Jenkins did not specifically dispute the Mehras' assertions but, instead, asserted several reasons why the motion should be denied. Because the jurisdictional issue is dispositive, we will not decide the motion to dismiss.

4

appeal, in which case jurisdiction would lie in the Court of Appeals of Virginia. If we answer that question in the negative, then we must ascertain whether this Court has jurisdiction to hear this appeal pursuant to Code § 8.01-670(A)(3).[3]

We begin our analysis by noting that "[t]he right of appellate review from a finding of contempt or a refusal to find contempt did not exist at all at common law."[4] Tyler v. Baltimore Cnty., 259 A.2d 307, 310 (Md. 1969); see Cossart v. State, 14 Ark. 538, 541-42 (1854); Cooper v. People, 22 P. 790, 795 (Colo. 1889); Hunter v. State, 6 Ind. 339, 340 (1855); New England Novelty Co. v. Sandberg, 54 N.E.2d 915, 917 (Mass. 1944); Masonite Corp. v. International Woodworkers of Am., AFL CIO, 206 So. 2d 171, 177 (Miss. 1967). Rather, when not otherwise provided by statute, "the sole adjudication of contempt, and the punishment thereof, belong[ed] exclusively,

---

[3] The provisions of Code § 8.01-670(B)(3) are not applicable because the order being challenged in this appeal is not interlocutory. See Comcast of Chesterfield Cnty., Inc. v. Board of Supervisors of Chesterfield Cnty., 277 Va. 293, 306, 672 S.E.2d 870, 876 (2009).

[4] In fact, the common law tolerated no exception to a court's contempt powers, rejecting even collateral attacks on judicial findings of contempt. See Ex parte Kearney, 20 U.S. 38, 43-45 (1822) (joining the English Court of Common Pleas in rejecting an application for a writ of habeas corpus on the ground that "no Court can discharge . . . a person that is in execution by the judgment of any other Court" for contempt (internal quotation marks omitted)).

and without interference, to each respective court."  Wells v. Commonwealth, 62 Va. (21 Gratt.) 500, 503-04 (1871) (internal quotation marks omitted); see also Van Dyke v. Superior Court of Gila Cnty., 211 P. 576, 588 (Ariz. 1922); Ex parte Senior, 19 So. 652, 653 (Fla. 1896); Masonite, 206 So. 2d at 177. Appellate courts were thus without jurisdiction to review such findings.  See, e.g., Onomea Sugar Co. v. Austin, 5 Haw. 604, 606 (1888) (dismissing for want of jurisdiction an appeal of a finding of civil contempt); Hunter, 6 Ind. at 340 ("Courts of record have exclusive control over charges for contempt; and their conviction or acquittal is final and conclusive."); Tyler, 259 A.2d at 311 (dismissing for want of jurisdiction an appeal of a denial of contempt); State v. Little, 94 S.E. 680, 681-82 (N.C. 1917) (dismissing for want of jurisdiction an appeal of a finding of criminal contempt); see generally Cooper, 22 P. at 795 (discussing common law rule and statutory exceptions thereto).  This general rule applied to trial court rulings with respect to both civil and criminal contempt.  See, e.g., Austin, 5 Haw. at 606; Sandberg, 54 N.E.2d at 917.

Under the common law, the lack of appellate review from a finding of contempt or the refusal to find contempt was justified as necessary because

> the power of the . . . courts over contempt is
> omnipotent, and its exercise is not to be enquired
> into by any other tribunal.  This is the great bulwark

6

established by the common law for the protection of courts of justice, and for the maintenance of their dignity, authority and efficiency, and neither in England nor in the United States has this unrestricted power been seriously questioned.

Senior, 19 So. at 653 (internal quotation marks omitted). "[T]he power to punish for contempt was so absolutely essential to the functioning and, indeed, the existence of courts that to be effectual the power must be instantly available and inevitable to the point of not being subject to change." Tyler, 259 A.2d at 310. To allow "a contumacious witness, juror, party litigant, or counsel" to challenge a finding of contempt on appeal would "effectually check the machinery of the court in its operation, and frustrate the wholesome administration of the law." Cossart, 14 Ark. at 541.

The General Assembly has declared that in the Commonwealth, "[t]he common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth . . . continue[s] in full force [and is] the rule of decision, except as altered by the General Assembly." Code § 1-200; see also Evans v. Evans, 280 Va. 76, 83-84, 695 S.E.2d 173, 176-77 (2010). Thus, because a trial court's ruling regarding contempt was not appealable under the common law, we must determine whether the General Assembly has abrogated the common law rule to provide a right of appeal from contempt proceedings, particularly a trial court's judgment refusing to

7

find civil contempt.  In making that determination, this Court must read the enactments of the General Assembly, which " 'is presumed to have known and to have had the common law in mind in the enactment of a statute,' " in conjunction with the common law, giving effect to both " 'unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law.' "  Isbell v. Commercial Inv. Assocs., Inc., 273 Va. 605, 614, 644 S.E.2d 72, 75-76 (2007) (quoting Wicks v. City of Charlottesville, 215 Va. 274, 276, 208 S.E.2d 752, 755 (1974)).  Abrogation of the common law thus occurs only when "the legislative intent to do so is plainly manifested," as "there is a presumption that no change was intended."  Id. at 613-14, 644 S.E.2d at 75 (citations and internal quotation marks omitted).

But, even where a statute's purpose is to abrogate the common law, such statute is " 'to be strictly construed and not to be enlarged in [its] operation by construction beyond [its] express terms.' "  Id. at 613, 644 S.E.2d at 75 (quoting Chesapeake & Ohio Ry. Co. v. Kinzer, 206 Va. 175, 181, 142 S.E.2d 514, 518 (1965)).  Thus, " '[w]hen an enactment does not encompass the entire subject covered by the common law, it abrogates the common[] law rule only to the extent that its terms are directly and irreconcilably opposed to the rule.' "

Id. at 614, 644 S.E.2d at 75 (quoting Boyd v. Commonwealth, 236 Va. 346, 349, 374 S.E.2d 301, 302 (1988)).

Starting with Code § 19.2-318, its provisions, in relevant part, state: "From a judgment for any civil contempt of court an appeal may be taken to the Court of Appeals.  A writ of error shall lie from the Court of Appeals to a judgment for criminal contempt of court."  The version of this statute in effect prior to the creation of the Court of Appeals in 1984 provided in pertinent part: "To a judgment for any civil or criminal contempt of court a writ of error shall lie from the Supreme Court of Virginia."  Code § 19.2-318 (1984).

The first two enactments of what is now Code § 19.2-318 permitted a writ of error "in any judgment, for contempt, rendered by any court other than the court of appeals [now the Supreme Court of Virginia]."  1826 Acts ch. 18; see also 1848 Acts ch. 120 (enacting new Title III, Chapter 24, Section 6 of the Criminal Code, pertaining to contempts).  In addition to the 1848 act being part of the Criminal Code, both acts stated that nothing therein "shall be construed to extend to any proceeding by attachment to compel the performance of any decree or judgment, or to enforce obedience thereto," i.e., the kind of civil contempt at issue in this appeal.  1826 Acts ch. 18; 1848 Acts ch. 120.  By enacting these provisions, the General Assembly "plainly manifested" an intent to abrogate the common

9

law to allow an appeal from a judgment for criminal contempt. See Isbell, 273 Va. at 613, 644 S.E.2d at 75.  In the 1860 Code, the statutory provision allowing a writ of error to a judgment for contempt still excluded a judgment for civil contempt of the type at issue here: "To a judgment against a free person for a contempt of court, other than for the non-performance of, or disobedience to, a judgment, decree, or order, a writ of error shall lie."  Code 1860, Ch. 209, § 4, p. 840 (emphasis added).

In 1898, the General Assembly enacted a statute providing that in "any case of contempt[,] any judgment of conviction therefor may be reviewed on [a] writ of error."  1898 Acts ch. 513; Code 1898, ch. 282, § 3768.  In Trimble v. Commonwealth, 96 Va. 818, 32 S.E. 786 (1899), this Court applied former Code § 3768 to award a writ of error to a trial court's judgment for contempt in a matter involving custody of a child.  Id. at 820, 32 S.E. at 786.  Finding that Code § 3768 allowed the appeal, this Court reversed the judgment of the trial court.  Id. at 820-21, 32 S.E. at 787.  In 1904, however, the General Assembly repealed the portion of former Code § 3768 that allowed, on a writ of error, review of a judgment of conviction in "any case of contempt."  1904 Acts ch. 194.  Following that repeal, the 1904 Code provided, in regard to appeals from contempt proceedings: "To a judgment for a contempt of court, other than for the nonperformance of, or disobedience to, a judgment,

10

decree, or order, a writ of error shall lie to the supreme court of appeals."  Code § 4053 (1904).

That statute, in particular the language "other than for the non-performance of, or disobedience to, a judgment, decree, or order," was at issue in Forbes.  There, the defendants had been adjudged in contempt for "disobeying, disregarding, and evading" a trial court's decree.  Forbes, 107 Va. at 854, 60 S.E. at 81.  On appeal, this Court dismissed the writ of error for lack of jurisdiction under the plain language of former Code § 4053 of the 1904 Code because the contempt was for disobeying a lawful decree of the trial court.  Id. at 857-59, 60 S.E. at 82.  The Court explained that "the theory upon which section 4053 rest[ed], in providing that a writ of error shall lie to this [C]ourt to all judgments for contempt other than for the nonperformance of or disobedience to a judgment, decree, or order, seems to be that in such case the parties to the cause should either appeal from the judgment, decree, or order, if they felt aggrieved by it, or, it if was a lawful decree or order, that it should be obeyed."  Id. at 858, 60 S.E. at 82.

Less than two months after the decision in Forbes, the General Assembly amended former Code § 4053 to read: "To a judgment for a contempt of court a writ of error shall lie to the supreme court of appeals."  1908 Acts ch. 194.  With that amendment coming soon after Forbes, the General Assembly may be

11

understood to have intended, although it did not expressly state, that appeals would lie from judgments for civil contempt. The General Assembly made that explicit in 1979 when the provision was amended to state: "To a judgment for any civil or criminal contempt of court a writ of error shall lie from the Supreme Court of Virginia." 1979 Acts ch. 649. Finally, in 1984, the General Assembly amended the statute to its current form.

As this history makes clear, the provisions of Code § 19.2-318 and its statutory predecessors, including the short-lived § 3768 of Ch. 282 of the 1898 Code, abrogated the common law rule only with regard to judgments _for_ contempt. Thus, the question remaining is whether, in the instant case, the circuit court's judgment refusing to find civil contempt is a "judgment for any civil contempt." Code § 19.2-318.

Jenkins argues that because Code § 19.2-318 encompasses only "a judgment _for_" contempt (emphasis added) and because the circuit court's judgment did not find civil contempt, the statute does not govern this appeal. Jenkins also asserts that Code § 19.2-319, which allows a court to postpone the execution of a "judgment for any civil or criminal contempt," makes clear that the term "judgment for" does not include a trial court's refusal to hold a party in civil contempt. Jenkins argues that although Code § 19.2-318 does not govern the instant appeal,

12

this Court nevertheless has jurisdiction pursuant to Code § 8.01-670(A)(3).

The Mehras respond that Jenkins' position would result in the "illogical and inconsistent jurisdictional arrangement" of appeals from judgments holding persons in civil contempt lying with the Court of Appeals but appeals from judgments refusing to hold persons in civil contempt resting in this Court. The Mehras contend that an equally faithful interpretation of Code § 19.2-318 is that a trial court's decision refusing to find a party in civil contempt is simply not appealable. However, if an appeal does lie from such a judgment, the Mehras contend that the Court of Appeals has jurisdiction of the appeal pursuant to Code § 19.2-318.

In interpreting the terms used by the General Assembly in Code § 19.2-318, we are bound by the plain meaning of the statutory language. Hicks v. Mellis, 275 Va. 213, 218, 657 S.E.2d 142, 144 (2008). "[I]f the language of a statute is unambiguous, courts may not interpret the language in a way that effectively holds that the General Assembly did not mean what it actually expressed." Id. We agree with Jenkins that Code § 19.2-318 does not govern this appeal. The phrase "judgment for any civil contempt" plainly means a judgment holding an individual in civil contempt of court. If the General Assembly intended to create appellate jurisdiction to review a judgment

refusing to hold a person in civil contempt, it would have used a phrase such as "judgment concerning" or "judgment regarding" any civil contempt.  Furthermore, the second sentence in Code § 19.2-318 contains the same phrase with regard to a criminal contempt: "A writ of error shall lie from the Court of Appeals to a judgment for criminal contempt of court."  (Emphasis added.)

In addition, as noted by Jenkins, Code § 19.2-319 utilizes the same phrase in authorizing a court to postpone execution of a "judgment for any civil or criminal contempt."  Obviously, postponement of a judgment refusing to hold a person in civil or criminal contempt is unnecessary.  Moreover, the General Assembly has used the phrase "judgment for" in many instances throughout the Code in which the phrase can only mean a judgment awarding a certain type of relief.  See, e.g., Code § 8.01-38.1 (if punitive damages award is above statutory cap, trial judge is required to "enter judgment for such damages in the maximum amount provided by this section"); Code § 8.01-446 (requiring circuit court clerks to docket "any judgment for a specific amount of money"); Code § 8.01-460 (stating that a "judgment for support and maintenance" of a spouse or children is a lien on the obligor's real estate).  "It is a common canon of statutory construction what when the legislature uses the same term in separate statutes, that term has the same meaning in each unless

14

the General Assembly indicates to the contrary." <u>Commonwealth v. Jackson</u>, 276 Va. 184, 194, 661 S.E.2d 810, 814 (2008).

Thus, we conclude that Code § 19.2-318 does not provide appellate jurisdiction for either this Court or the Court of Appeals to review the judgment of the circuit court dismissing the rule to show cause and refusing to hold the Mehras in civil contempt of court. Finding no abrogation of the common law rule in the current or former versions of Code § 19.2-318 that would give the Court jurisdiction of this appeal, we turn now to Code § 8.01-670(A)(3), which, according to Jenkins, allows the instant appeal to this Court.

In its current form, Code § 8.01-670(A)(3) provides that "any person may present a petition for an appeal to the Supreme Court of Virginia if he believes himself aggrieved . . . [b]y a final judgment in any . . . civil case." The origins of that statute can be traced to the Revised Code of 1803, which gave this Court jurisdiction over "writs of error . . . to and from any final decree or judgment of the High Court of Chancery, General Court, and District Courts." 1 Rev. Code 1803, ch. 63, § 14, p. 62. That provision gradually became more specific, as the General Assembly limited its application to civil cases. For example, in 1830, the General Assembly provided an appeal for any person "aggrieved . . . by any judgment, proceeding or order" of the circuit superior courts of law and chancery "in

15

any matter, cause or controversy, at common law, such matter, cause or controversy, being civil and not criminal in its nature, and such judgment, proceeding or order, being final." 1831 Acts ch. 11. In the 1860 Code, the provisions dealing with civil appeals were codified in separate titles from those governing criminal appeals. See Code 1860, Tit. 51, ch. 182 (civil cases) and Tit. 55, ch. 209 (criminal cases). The pertinent statute, at that time, allowed an appeal or writ of error "to any civil case wherein there is a final judgment, decree or order." Code 1860, ch. 182 § 2. The current version of Code § 8.01-670(A)(3) has been in existence since 1977. 1977 Acts ch. 617.

Considering, as we must, that the General Assembly "had the common law in mind" when it first gave this Court appellate jurisdiction to review final judgments in civil cases, we conclude that the current and former versions of Code § 8.01-670(A)(3) never abrogated the common law rule with respect to an appeal from a trial court's judgment refusing to hold an individual in civil contempt. First, it does not "clearly appear[] from express language or by necessary implication that the purpose of [Code § 8.01-670(A)(3)] was to change the common law." Isbell, 273 Va. at 614, 644 S.E.2d at 75-76 (internal quotation marks omitted). Merely stating that a party may appeal from "any" final judgment in a civil case does not

16

"plainly manifest[]," see id. at 613, 644 S.E.2d at 75, an intent to eliminate the "great bulwark established by the common law" providing that judgments in contempt proceedings were unassailable. Senior, 19 So. at 653 (internal quotation marks omitted).[5] Furthermore, any suggestion that the word "any" can be construed as an express abrogation of the common law to allow an appeal from a refusal to find civil contempt is refuted by the history of Code § 19.2-318.

As we have explained, Code § 19.2-318, at its inception, permitted a writ of error only to a judgment for criminal contempt and expressly excluded "any proceeding by attachment to compel the performance of any decree or judgment, or to enforce obedience thereto." 1826 Acts ch. 18. Prior to this enactment, however, Code § 8.01-670's predecessor was already in existence and allowed a writ of error "to and from any final decree or judgment." 1 Rev. Code 1803, ch. 63, § 14, p. 62. If the General Assembly intended for that language in the Code of 1803 to abrogate the common law rule so as to allow an appeal from a judgment in a civil contempt proceeding, whether from a judgment for contempt or the opposite, the subsequent enactment of the 1826 version of Code § 19.2-318 rendered the two statutes in

_____

[5] For an example of the kind of "plain[] manifest[ation]" that suffices to abrogate the common law, see Doss v. Jamco, Inc., 254 Va. 362, 368-72, 492 S.E.2d 441, 445-47 (1997).

17

conflict, the former allowing an appeal from a judgment in a civil contempt proceeding and the latter excluding such. Moreover, since the 1826 version of Code § 19.2-318 was enacted, the former and current versions of Code §§ 8.01-670(A)(3) and 19.2-318 have continued to co-exist and would be in conflict today if we construe Code § 8.01-670(A)(3) to allow an appeal to this Court from a judgment refusing to find civil contempt. Code § 19.2-318, being the more specific statute because it explicitly addresses contempt, see Viking Enter. v. County of Chesterfield, 277 Va. 104, 110, 670 S.E.2d 741, 744 (2009), allows an appeal only from a "judgment for" civil contempt.

Further, if we interpret Code § 8.01-670(A)(3) to give this Court jurisdiction of the instant appeal, there would exist the anomaly of jurisdiction lying in the Court of Appeals from a judgment holding an individual in civil contempt but jurisdiction lying in this Court from a judgment refusing to find an individual in civil contempt. We do not believe the General Assembly intended such an anomaly. Thus, we conclude that the General Assembly has abrogated the common law rule that appellate review of contempt proceedings is not available only with regard to judgments "for" contempt. Consequently, the Court does not have jurisdiction under Code § 8.01-670(A)(3) to hear this appeal.

18

CONCLUSION

In sum, we conclude that it does not "clearly appear[] from express language or by necessary implication that the purpose of [Code § 8.01-670(A)(3)] was to change the common law" with respect to appeals from judgments refusing to find civil contempt.  See Isbell, 273 Va. at 614, 644 S.E.2d at 75-76 (internal quotation marks omitted).  The General Assembly has yet to abrogate the common law rule to confer jurisdiction over the appeal in this case.[6]  While the former and current versions of Code § 19.2-318 abrogated the common law so as to allow appeals from judgments for civil contempt, this case does not involve an appeal from such a judgment.[7]

---

[6] We are aware that appeals have been taken, though not to this Court, when a party challenged a trial court's refusal to hold the other party in civil contempt.  See, e.g., Barnhill v. Brooks, 15 Va. App. 696, 704, 427 S.E.2d 209, 214-15 (1993); Wells v. Wells, 12 Va. App. 31, 36, 401 S.E.2d 891, 894 (1991); Willis v. Spinner, Record No. 1004-99-2, slip op. at *5 (Oct. 19, 1999).  It appears, however, that the issue of appellate jurisdiction was not raised in those cases.

[7] In this case, Jenkins asked the circuit court to enforce its own order through the use of the court's inherent contempt power.  See Wells, 62 Va. (21 Gratt.) at 503.  There are certain statutes, however, that address the power of contempt in specific situations.  See, e.g., Code § 2.2-2635 ("Any person failing to comply with [a subpoena duces tecum] shall be subject to punishment for contempt by the court issuing the subpoena."); Code § 3.2-4726 ("All parties disobeying the orders or subpoenas of the Commissioner [of Agriculture and Consumer Affairs] are guilty of contempt and shall be certified to an appropriate court for punishment."); Code § 8.01-407(A) ("Failure to respond to [a summons to testify] shall be punishable by the court in which the proceeding is pending as for contempt."); Code § 16.1-252(J) ("Violation of any [preliminary removal] order [in cases

19

For these reasons, we hold that the Court is without jurisdiction to hear this appeal.  We will therefore dismiss the appeal.

Dismissed.

---

of child abuse or neglect] issued pursuant to this section shall constitute contempt of court."); Code § 26-13 (Fiduciary refusing to file inventory after prior order "shall be deemed guilty of contempt of court, and be dealt with accordingly."). This appeal does not present, and today we do not address, whether a court's decision declining to exercise its contempt power pursuant to such provisions is reviewable on appeal.