# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Thursday the 2nd day of May, 2024.*

RYAN LEGGETT, ET AL.,                                                                      PETITIONERS,

against          Record No. 240270
                 Circuit Court No. CL-24-330

THE SANCTUARY AT FALSE CAPE
 CONDOMINIUM ASSOCIATION, INC.,                                             RESPONDENT.

UPON A PETITION UNDER CODE § 8.01-626
JUSTICES POWELL, KELSEY, AND RUSSELL

Petitioners, Ryan Leggett, Bethany Johnson, and Eric Piedra, request that we review the Circuit Court of Virginia Beach's order denying their request for an injunction in their ongoing dispute with The Sanctuary at False Cape Condominium Association, Inc. (the "Association") and its board of directors (the "Board").  For the reasons that follow, we grant the petition for review, reverse the circuit court's order, and remand this case to consider the merits of Petitioners' request for an injunction.

## I.  Background[1]

The Association is "a condominium management association organized as a nonstock corporation for the purposes of maintaining and preserving the common property of the condominium complex known as The Sanctuary at False Cape (the "Property").  Leggett, Johnson, and Piedra own condominium units located at the Property.

The Association is controlled by the Board.  One responsibility the Board has is to approve the annual budget.  According to the Association's By-Laws, the Board must mail a copy of the proposed budget, along with a notice of the meeting at which the budget will be voted on, to all unit owners at least thirty days before the meeting.  An audited financial statement reflecting the Association's financials for the previous fiscal year must be supplied to

---

[1] The trial court concluded that, regardless of the truth of Petitioners' allegations, it was precluded from awarding an injunction as a matter of law.  As a result, it did not address the accuracy of those allegations.  In reviewing that purely legal conclusion, we assume that all of Petitioners' allegations are true and award them all reasonable inferences that flow from those allegations.  *Cf. Vlaming v. West Point Sch. Bd.*, ___ Va. ___, 895 S.E.2d 705, 716 (2023); *Fines v. Rappahannock Area Cmty. Servs. Bd.*, 301 Va. 305, 312 (2022).

all unit owners before the Board votes on the budget for the ensuing year. The Board has failed to comply with these procedures since at least 2018 and has improperly approved a budget each year since.

Of particular relevance in this appeal is the process the Board used to pass the budget for Fiscal Year 2024. Petitioners allege that on October 28, 2023, the Board held a "Regular Board Meeting" attended by Board members and various unit owners. At this meeting, the Board proposed a budget that would increase the unit owners' monthly dues by 20%. Concerned unit owners were barred from asking questions or commenting on the proposed budget at this meeting. Soon after, on November 12, 2023, eighty-eight unit owners jointly submitted a "Written Request for Information" to the Board requesting that the Board "make available for inspection and copying certain books and records kept by or on behalf of the Association listed thereon." The Board ignored this request.

On December 9, 2023, the Board held another "Regular Board Meeting," at which it was set to vote on the proposed Fiscal Year 2024 budget, despite not mailing each unit owner the required notices or making an audit of the prior fiscal year available. A unit owner, on behalf of a majority of the Association's unit owners, "called a Point of Order to inquire as to the status of the audited financial statement and object to the 2024 proposed budget being approved without compliance with the By-Laws." The Board "admitted that no . . . financial audit was conducted, and instead for the first time, announced that the proposed 2024 budget would be converted to a 'Special Assessment.'" (emphasis removed). Then, the Board "voted to approve the 2024 proposed budget masked as a Special Assessment." Disgruntled by the Board's actions, a majority of the unit owners at the December 9 meeting voted to remove and replace the members of the Board. The existing Board has refused to acknowledge this vote as legitimate.

The unit owners on January 5, 2024, "submitted a written Petition for a Special Meeting signed by the majority of the membership pursuant to Section 3.2 of the By-Laws." The petition called for a special meeting to be held on January 20, 2024, to remove the Board, elect successors, and rescind the Special Assessment. The Board denied this petition and has taken no action since doing so.

Petitioners sued on January 24, 2024, asserting five separate counts—all seeking declaratory judgments. Petitioners sought declaratory judgments that (1) certain Board members were properly elected members of the Board (Count I), (2) the Board has failed to properly approve the annual budget since 2018 (Count II), (3) the Board failed to comply with the unit

2

owners' Request for Information sent pursuant to the Virginia Condominium Act (Count III), (4) the Board improperly approved a Special Assessment in contravention of the By-Laws (Count IV), and (5) the Board has, in contravention of the By-Laws, failed to call a Special Meeting requested by the unit owners (Count V).

On February 6, 2024, Petitioners sought an injunction pursuant to Code § 8.01-620, seeking to have the Association honor their Petition for a Special Meeting and schedule such a meeting so that the unit owners can vote to repeal the Special Assessment. In the request for injunction, Petitioners stated that the Association's attorney responded to the Petition for a Special Meeting on January 12, advising that the earliest the Board could convene was February 17, 2024. Petitioners specifically alleged that the Association's proposed course of action "impede[d] the [u]nit [o]wners' ability to take action, including *inter alia*, the rescission of the Special Assessment within sixty (60) days pursuant to Va. Code § 55.1-1825(A)." Petitioners filed the "Emergency Motion for Injunction" fifty-nine days after the Special Assessment was approved and twenty-five days after the Association's attorney notified Petitioners of the Association's proposed meeting date.

The circuit court heard argument on February 15, 2024. As pertinent here, the parties argued whether Code § 8.01-189 permitted the circuit court to grant an injunction during the pendency of a declaratory judgment action. The circuit court held that it did not, stating that "[Code § 8.01-189 is] pretty clear that I'm not allowed to do it. . . . [E]ven if the analysis was all in [Petitioners'] favor, I don't have the authority to do it."

Petitioners filed a Motion for Reconsideration, arguing that Code § 8.01-189 did not preclude the circuit court from granting injunctive relief because Code §§ 55.1-1915 and 8.01-282[2] provide independent bases upon which to grant injunctive relief separate and apart from the pendency of the suit for declaratory relief. Petitioners further contended that the circuit court had the authority to issue injunctive relief to prevent Petitioners from being "stripped of their statutory right to object and rescind the Special Assessment pursuant to Va. Code § 55.1-1825(A)." The circuit court denied this motion.

The circuit court memorialized these two rulings in an order on March 14, 2024, denying Petitioners' request for injunctive relief because Code § 8.01-189 "prohibits an injunction from

---

[2] It appears from Petitioners' brief to this Court that Petitioners intended to reference Code § 13.1-828 rather than Code § 8.01-282 in their Motion for Reconsideration, as the latter deals with motions to strike and is plainly inapplicable in this case.

being granted in a case involving solely declaratory judgment claims."

## II. Analysis[3]

"In general, we review a circuit court's judgment regarding a temporary injunction for an abuse of discretion." *Commonwealth v. Sadler Bros. Oil Co.*, Rec. No. 230610, 2023 Va. LEXIS 68, at *11 (2023). In doing so, "we determine whether a circuit court's legal conclusions are correct and note that a circuit court by definition abuses its discretion when it makes an error of law." *Id.* (internal alterations and quotation marks omitted) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)).

Here, the circuit court abused its discretion because it erroneously determined that Code § 8.01-189 precludes it from awarding Petitioners injunctive relief "even if the analysis was all in [Petitioners'] favor[.]"

Code § 8.01-189 provides that "[t]he pendency of any action at law or suit in equity brought merely to obtain a declaration of rights or a determination of a question of construction shall not be sufficient grounds for the granting of any injunction." Although the current version of the statute and its predecessors have long existed, we have not had occasion to interpret it. As Professor Sinclair notes, this Court has mentioned this statute only twice and has never "provide[d] any characterization of its purpose or effect, or even indicate[d] when it applies." *See* Kent Sinclair, 1 Virginia Remedies § 4-4(B) (2023); *see also Williams v. Southern Bank*, 203 Va. 657, 662-64 (1962); *Gloth v. Gloth*, 154 Va. 511, 531 (1930).

In determining the meaning of any statutory provision, we begin with the statute's text, focusing on the plain meaning of the words chosen by the General Assembly in the context that they have been used. *Berry v. Board of Supervisors*, 302 Va. 114, 127-28 (2023). Here, the statute's first sentence refers to "[t]he *pendency* of any action at law or suit in equity[,]" i.e., the fact of a suit's existence. Code § 8.01-189. It then limits the types of suits to which it refers, explicitly limiting the statute's scope to those suits "brought *merely* to obtain a declaration of rights or a determination of a question of construction[.]" *Id.* (emphasis added). Then the statute makes clear that the pendency of such suits does not, without more, provide a basis for injunctive

---

[3] The Association contends that this case is moot because the basis for Petitioners' Emergency Motion for Injunction was that they had only sixty days from the date the Special Assessment was approved to vacate the assessment, and that date has since passed. However, Petitioners argued in their Motion for Reconsideration that injunctive relief could also be granted under two additional Code sections, neither of which depends on action being taken within sixty days of the Special Assessment's approval. Therefore, Petitioners' claims are not moot.

4

relief. Specifically, Code § 8.01-189 provides that such suits are "not . . . sufficient grounds for the granting of any injunction." *Id.*

Missing from Code § 8.01-189 is any language that suggests that injunctive relief to which a litigant otherwise would be entitled is precluded if that litigant also has filed a declaratory judgment action. Given a circuit court's statutory and common law authority to award injunctions in appropriate circumstances, the lack of such specific language is dispositive of the question.

Absent a clear manifestation by the General Assembly of an intention to abrogate the circuit court's ability to grant an injunction, the circuit court's power to do so remains intact. *See Day v. MCC Acquisition, LC*, 299 Va. 199, 207-08 (2020) (internal citations omitted) ("When interpreting statutes addressing common-law subjects, we read them in conformity with the preexisting common law to the greatest extent possible. A parallel canon of statutory interpretation applies to statutes codifying equitable proceedings."); *Jenkins v. Mehra*, 281 Va. 37, 44-45 (2011) (internal quotations omitted) ("Abrogation of the common law . . . occurs only when the legislative intent to do so is plainly manifested, as there is a presumption that no change was intended.").[4]

As a result, the statute does not preclude a circuit court from granting injunctive relief while a declaratory judgment action is pending. Rather, it precludes injunctive relief if the only basis for the injunction is the mere fact that a declaratory judgment action is pending. Thus, if a litigant is otherwise entitled to injunctive relief, the fact that a declaratory judgment action is pending does not prevent a circuit court from awarding that relief, and the circuit court abused its discretion in holding otherwise.

Although the text of the statute provides ample support for our conclusion, we note that respected legal commentators, in the absence of a definitive interpretation from this Court, have reached the same conclusion regarding the meaning of Code § 8.01-189. Professor Sinclair has reasoned that "[s]ince an application for declaratory relief does not require the showings of

---

[4] The circuit court also was concerned that issuing an injunction would require it to declare the respective rights of the parties, essentially deciding prematurely the declaratory judgment action. This concern, however, is misplaced. A declaratory judgment, as its name suggests, definitively declares the rights of the parties, whereas injunctive relief may be granted if the movant satisfies the circuit court of its equity, which can include demonstrating a likelihood, but not a certainty, of success on the merits. Therefore, issuing an injunction during the pendency of a declaratory judgment action does not necessarily resolve the declaratory judgment action.

irreparable harm, balance of hardship or injuries, or effect on public policy, it would make sense for [the statute] to be saying that—by itself simply suing for, or receiving—a declaratory judgment does not satisfy the prevailing standards for obtaining injunctive relief."  Kent Sinclair, 1 Virginia Remedies § 4-4(B).  Likewise, the late Professor T. Munford Boyd noted that this "very guarded" statute dictates that "if there are independent grounds for an injunction outside of the mere pendency of an action seeking merely a declaration of rights, the injunction may properly issue."  Martin P. Burks, Common Law and Statutory Pleading and Practice § 196, at 320 (4th ed. 1952 & Supp. 1961).

Accordingly, the circuit court committed reversible error because it determined that Code § 8.01-189 precluded it from even considering whether to issue an injunction in this case. Because the circuit court did not address the merits of Petitioners' request for injunctive relief, we do not express any opinion on the merits of that request.  *Cf. California Condo. Ass'n v. Peterson*, 301 Va. 14, 23 (2022) (recognizing that, in general, "we serve as 'a court of review, not of first view'") (quoting *Bailey v. Loudoun Cnty. Sheriff's Office*, 288 Va. 159, 181 (2014)). Rather, we remand to the circuit court so it may address that request in the first instance.

### III.  Conclusion

For the foregoing reasons, we reverse the circuit court's order denying Petitioners' motion for an injunction and remand the case to the circuit court to consider the merits of Petitioners' request for an injunction.

This order shall be published in the Virginia Reports and certified to the Circuit Court of Virginia Beach.

A Copy,

Teste:

Clerk

6