COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Athey, Fulton* and Lorish
Argued by videoconference


COMMONWEALTH OF VIRGINIA
                                                    OPINION BY
v.        Record No. 0256-25-4          JUDGE CLIFFORD L. ATHEY, JR.
                                              JANUARY 13, 2026
WILLIAM MESSENGER


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Petula C. Metzler, Judge

Erin Dugan Whealton, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General; Ethan C. Treacy, Assistant Solicitor
General, on briefs), for appellant.

No brief or argument for appellee.

Amicus Curiae: Monica T. Monday (Gentry Locke, on brief).


William Messenger ("Messenger"), having been designated as a sexually violent predator

pursuant to the Virginia Sexually Violent Predators Act ("SVPA") (Code §§ 37.2-900 to -921),

was taken into custody through an emergency custody order ("ECO") issued by a magistrate

pursuant to Code § 37.2-913. After a hearing before the Circuit Court of Prince William County

("circuit court"), the circuit court found that any violations of the conditions of Messenger's

release were not significant enough to merit revoking his conditional release. In the order

placing Messenger back on conditional release, the circuit court declared that "no Emergency

Custody Order shall henceforth be issued against Mr. Messenger unless it is issued by this Court

or other Court of competent jurisdiction." On appeal, the Commonwealth solely challenges this

---

* Justice Fulton participated in the hearing and decision of this case prior to his
investiture as a Justice of the Supreme Court of Virginia.

portion of the circuit court's order, asking this Court to reverse the declaration of the circuit court and allow for the issuance of ECOs by all "judicial officers," not just "courts of competent jurisdiction." For the following reasons, we reverse the circuit court's declaration and remand for further proceedings consistent with this opinion.

## I. BACKGROUND[1]

On October 1, 1991, Messenger was convicted of forcible sodomy and sentenced to 25 years of incarceration, with 15 years suspended. Following his release from incarceration, Messenger was adjudicated a sexually violent predator on November 20, 2009. As a result, he was civilly committed to the Virginia Center for Behavioral Rehabilitation ("VCBR"). On April 2, 2013, Messenger was conditionally released from civil commitment at the VCBR. The following year, the circuit court found him in violation of the conditions of his release and he was recommitted to VCBR. In December of 2014, he was re-released on conditions and, after having been found in violation of those conditions of release, he was recommitted to VCBR in May of 2017. He was conditionally released again in May of 2020, detained on an ECO in November of 2020, and released by the circuit court in December of 2020. By September of 2021, he was detained again pursuant to an ECO but was conditionally released by the circuit court in February of 2022.

On September 9, 2022, a magistrate in Prince William County issued an ECO based on information provided by the probation office that Messenger had violated the conditions of his conditional release order. On January 11, 2023, the circuit court held a hearing on the alleged violations, but did not find that any of the violations of Messenger's conditional release plan

---

[1] We recite the facts in the light most favorable to Messenger, the prevailing party below. *Commonwealth v. Squire*, 278 Va. 746, 749 (2009). Additionally, "[t]o the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Va. State Bar ex rel. Sixth Dist. Comm.*, 302 Va. 234, 240 n.2 (2023).

rendered him "no longer suitable for conditional release." The circuit court issued an order to this effect on February 1, 2023. The circuit court conditionally released Messenger on May 25, 2023.

On May 13, 2024, a report of Messenger's progress indicated that several of Messenger's answers during a mandatory polygraph indicated the presence of deception. The report noted that there was a tense relationship between Messenger and Officer Gaines, his supervising officer, wherein Officer Gaines indicated that Messenger engaged in "repeated gaslighting" and "calculating and manipulative behaviors." In his defense, Messenger asserted that he had religious reasons for failing to comply with Officer Gaines's directives. On May 15, 2024, Officer Gaines petitioned a magistrate for the issuance of an ECO against Messenger, alleging that he violated five conditions of his conditional release, including failing to comply with instructions regarding his GPS device. Officer Gaines's request for an ECO was granted by a magistrate of the City of Portsmouth where Messenger was residing.

On November 26, 2024, the circuit court held a hearing to determine whether Messenger had violated the conditions of his release. After hearing evidence presented by both the Commonwealth and Messenger, the circuit court observed that during Officer Gaines's testimony, she "conveniently omitted the fact that the GPS was functioning properly before she sought the Emergency Custody Order, but she sought it anyway." The circuit court described this behavior as "absolutely shameful" and stated that it resulted in Messenger being incarcerated "since May" of 2024. As a result, the circuit court stated that it "hereby orders that no Emergency Custody Order shall henceforth be issued against Mr. Messenger unless it is issued by this Court or other Court of competent jurisdiction. That's the ruling of the Court." When the Commonwealth objected to this oral ruling, the circuit court responded that "if someone thinks that is an issue that should be appealed, I understand that fully." The circuit court also opined

that the "magistrate also doesn't have the benefit of the history of knowing this case as much as, frankly I do or anyone else in this court does. That's why I particularly wrote all of this out." The circuit court further opined that it was "struggling mightily to maintain [its] judicial temperament" and that it "wish[ed] there was somebody here [it] could yell at because somebody needs to be yelled at" for what happened regarding Messenger's GPS device. The matter was continued to January 3, 2025, for a status hearing.

On January 3, 2025, the circuit court entered a final order finding Messenger in violation of several conditions of his conditional release but again failed to find the violations "sufficient to render [Messenger] no longer suitable for conditional release." The court also ordered that "no Emergency Custody Order shall henceforth be issued against Mr. Messenger unless it is issued by this Court or other Court of competent jurisdiction." On January 9, 2025, the circuit court ordered Messenger to be released from custody. The Commonwealth appealed.

II. Analysis

A. *Standard of Review*

We review questions of statutory interpretation de novo. *Artis v. Commonwealth*, 76 Va. App. 393, 397 (2023). We also review questions of justiciability de novo. *Berry v. Bd. of Supervisors*, 302 Va. 114, 128 (2023); *Platt v. Griffith*, 299 Va. 690, 692 (2021).

B. *The Commonwealth has standing to challenge the circuit court's order, and the dispute is ripe for resolution.*

The Commonwealth does not challenge the circuit court's determination that Messenger be conditionally released. Instead, the Commonwealth challenges the portion of the circuit court's order that functionally prohibited Virginia magistrates from issuing further emergency custody orders against Messenger. During oral argument, the panel inquired of the Commonwealth whether this matter was justiciable and subsequently ordered supplemental briefing from the Commonwealth and court-appointed amicus. *See Martin v. Ziherl*, 269 Va. 35,

- 4 -

40 (2013) ("[T]he Court will consider, sua sponte, whether a decision would be an advisory opinion because the Court does not have the power to render a judgment that is only advisory."); Rule 5A:23(f). Both the Commonwealth and amicus contend on brief that the dispute is justiciable because Messenger's frequent violations of the terms of his conditional release indicate that there is a substantial risk of him reoffending, and because the Commonwealth's interest in supervising Messenger is actively harmed by its inability to meaningfully petition the magistrates of Virginia for emergency relief against Messenger. We agree.

"Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Morgan v. Bd. of Supervisors*, 302 Va. 46, 58 (2023) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998)). "[A] litigant has standing if he has 'a sufficient interest in the subject matter of the case so that the parties will be actual adversaries and the issues will be fully and faithfully developed.'" *Howell v. McAuliffe*, 292 Va. 320, 332 (2016) (quoting *Cupp v. Bd. of Supervisors*, 227 Va. 580, 589 (1984)). "[S]tanding ordinarily requires 'a direct interest, pecuniary or otherwise, in the outcome of the controversy that is separate and distinct from the interest of the public at large.'" *Layla H. v. Commonwealth*, 81 Va. App. 116, 134 (2024). A party may establish standing through "[a]n allegation of future injury . . . if the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)).

In addition to standing requirements, litigants must also satisfy statutory requirements to properly appear before this Court. "Unless otherwise provided by law, any aggrieved party may appeal to the Court of Appeals from . . . any final judgment, order, or decree of a circuit court in a civil matter." Code § 17.1-405(A)(3). "In order for a petitioner to be 'aggrieved,' it must affirmatively appear that such person had some direct interest in the subject matter of the

proceeding that he seeks to attack." *Va. Beach Beautification Comm'n v. Bd. of Zoning Appeals*, 231 Va. 415, 419 (1986). "The Commonwealth's interest in a proceeding under Code § 37.2-913 is protection of the public from individuals who have already been adjudicated as SVPs." *Harvey v. Commonwealth*, 297 Va. 403, 420-21 (2019).

Here, the Commonwealth's interest meets the requirements for constitutional standing and for review under our statutory framework. Messenger is a sexually violent predator who "has been convicted of a sexually violent offense" and "finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts." Code § 37.2-900. This is further demonstrated by the fact that Messenger has had multiple ECOs issued against him and has been found numerous times to have violated multiple conditions of his conditional release. The Commonwealth has alleged that its interest in monitoring Messenger and protecting the public from him is restricted by the circuit court's actions. *Harvey*, 297 Va. at 420-21. This direct interest renders the Commonwealth an "aggrieved party" under our statutory framework. *See* Code § 17.1-405(A)(3). As such, there is a "substantial risk" that Messenger will violate the conditions of his release again and that the Commonwealth will need to seek an ECO from a judicial officer. *Driehaus*, 573 U.S. at 158. Thus, the Commonwealth has standing to challenge the circuit court's order.

Next, we address whether the appeal is ripe. "Whereas mootness addresses a once viable claim that has lost its viability, the concept of ripeness applies to claims that, while potentially viable at some point in the future, have yet to mature into a justiciable controversy." *Berry*, 302 Va. at 131. To be ripe, there must be "an actual controversy between the parties that is not based solely on speculation or purely hypothetical scenarios that may (or may not) occur at some undefined point in the future." *Id.* "A case is fit for judicial decision when the issues are purely

- 6 -

legal and when the action in controversy is final and not dependent on future uncertainties."
*Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006).

In the absence of direct case law concerning the unique circumstances present here in a proceeding under the SVPA, our case law regarding pre-filing injunctions is instructive. A pre-filing injunction is an order from a court that prevents a litigant from filing any cases or appeals in that court. *See Madison v. Bd. of Supervisors*, 296 Va. 73, 76-78 (2018). Although legally distinct, a pre-filing injunction is analogous to the limitations the circuit court imposed here. And although a pre-filing injunction limits *prospective* actions in future proceedings, because a litigant's access to the Virginia justice system is presently interrupted or restricted, Virginia courts have allowed appeals of pre-filing injunctions even though the party has not attempted to file further pleadings and had those pleadings refused. *See Switzer v. Switzer*, 273 Va. 326, 328-34 (2007) (holding that the Court of Appeals abused its discretion in limiting petitioner's "appeals of right" when it upheld a total pre-filing injunction against petitioner); *Gordon v. Kiser*, 296 Va. 418, 424-25 (2018) (remanding the circuit court's imposition of a pre-filing injunction for failing to consider the four-factor test for imposing a pre-filing injunction); *Watwood v. Commonwealth*, 79 Va. App. 751, 757-60 (2024) (affirming the denial of appellant's motion to vacate but remanding the matter for the circuit court to consider the four-factor test for imposing a pre-filing injunction). Although the circuit court's order here limited access to magistrates but not "courts of competent jurisdiction," we still find the above-cited cases persuasive to show that the Commonwealth's assignment of error is a justiciable controversy ripe for our consideration, because just as in *Switzer*, *Gordon*, and *Watwood*, the Commonwealth is challenging a court order that limits its otherwise unrestricted access to a crucial part of the Virginia justice system.

Hence, we find that this appeal is ripe because the Commonwealth has a recognized interest in being able to protect the public from sexually violent predators, a class of persons

which includes Messenger, and the Commonwealth has alleged that it is presently prevented from accessing the magistrates of the Commonwealth of Virginia to fulfill its duty of supervision over Messenger. Thence, having found that the matter is justiciable, we proceed to the merits of the Commonwealth's appeal.

C. *The circuit court's order limiting the authority of judicial officers to issue ECOs is contrary to Code § 37.2-913.*

The Commonwealth argues that the circuit court's order restricting the issuance of ECOs against Messenger violates Code § 37.2-913. We agree.

"[T]he general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used." *Hillman v. Commonwealth*, 68 Va. App. 585, 592-93 (2018) (quoting *Meeks v. Commonwealth*, 274 Va. 798, 802 (2007)). "[W]hen a term is used in different sections of a statute, we give it the same meaning in each instance unless there is a clear indication the General Assembly intended a different meaning." *Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trs.*, 283 Va. 190, 195 (2012). "It is a common canon of statutory construction that when the legislature uses the same term in separate statutes, the term has the same meaning in each unless the General Assembly indicates to the contrary." *Jenkins v. Mehra*, 281 Va. 37, 48 (2011) (quoting *Commonwealth v. Jackson*, 276 Va. 184, 194 (2008)). With these principles in mind, we turn to the statute at issue.

Code § 37.2-913(A) states in relevant part that:

> A judicial officer may issue an emergency custody order, upon the sworn petition of any responsible person or upon his own motion, based upon probable cause to believe that a respondent on conditional release within his judicial district has violated the conditions of his release and is no longer a proper subject for conditional release. The judicial officer shall forward a copy of the petition and the emergency custody order to the circuit court that conditionally released the respondent, the Attorney General, the Department, and the attorney for the Commonwealth for the locality that is the location of the respondent's residence.

Once subject to an ECO, the respondent "shall remain in custody until a hearing is held in the circuit court that conditionally released the respondent on the motion or petition to determine if he should be returned to the custody of the Commissioner [of Behavioral Health and Developmental Services]." Code § 37.2-913(C).

Although the term "judicial officer" is not defined in the SVPA, we hold that the term—as used here—includes magistrates. The text of the SVPA demonstrates that the term "judicial officer" means something different than just a "court of competent jurisdiction." Looking to the plain language of the statute, the statute does not use the terms "judicial officer" and "circuit court" interchangeably. Rather, Code § 37.2-913(A) states that the "judicial officer" is required to forward a copy of the petition and the ECO "to the circuit court that conditionally released the respondent." Similarly, Code § 37.2-913(C) contemplates a hearing being held "in the circuit court" once an ECO is issued. If a court was the only judicial body able to issue an ECO, then the use of differentiating language here by the General Assembly would be rendered entirely superfluous. *See Cook v. Commonwealth*, 268 Va. 111, 114 (2004) ("Words in a statute should be interpreted, if possible, to avoid rendering words superfluous."). Accordingly, we hold that the term "judicial officer" under the SVPA includes magistrates.

When looking to other parts of the Code of Virginia, *Jenkins*, 281 Va. at 48, the General Assembly's use of "judicial officer" includes magistrates. *See* Code § 19.2-119 (including "any magistrate serving the jurisdiction" in its definition); Code § 19.2-56.2 (defining the term to mean a "judge, magistrate, or other person authorized to issue criminal warrants"). Just as in *Jackson* where the Virginia Supreme Court looked to "the standards applicable to probable cause determinations in a criminal proceeding for guidance" when the SVPA did not define "probable cause," we look to other parts of the Code of Virginia when a term is not defined in the SVPA. 276 Va. at 194. Furthermore, interpreting "judicial officer" consistently throughout the Code of

Virginia also reflects a policy judgment of the General Assembly to allow limited intrusions into an individual's liberty by a magistrate on an emergency basis without the involvement of a formal court proceeding. *See, e.g.*, Code § 19.2-152.8 (emergency protective orders); Code § 19.2-120 (bail); Code § 19.2-71 (issuance of arrest warrants); Code § 19.2-56 (issuance of search warrants). If the court system was solely entrusted with the issuance of emergency orders, then public safety would plausibly suffer on weekends, public holidays, and every other day before the courthouse opens and after the courthouse closes, or, judges would be sought out in their homes or in public to be pressed into hurried, impromptu court sessions that concerned time-sensitive matters of public safety. *See Harvey*, 297 Va. at 421 (noting that proceedings under Code § 37.2-913 were "intended to be both expeditious and temporary"). Rather than requiring judges to be "on call" or to hold "night court," the General Assembly allowed for magistrates to fulfill these duties as part of their vital role in Virginia's judicial system. *See id.* at 420-21 ("The General Assembly plainly contemplated expedited proceedings when an SVP has allegedly violated the conditions of his release.").

In addition to the plain language of the statute providing for the use of magistrates to enforce the provisions of the SVPA, nothing in the text of the SVPA gives circuit courts the ability to issue injunctive relief to enforce provisions of the SVPA. As noted by our Supreme Court, "a court may not go beyond the authority granted in the Act in determining the proper course of action for an SVP, even if it believes that doing so would 'best meet his need for treatment and supervision and best serve the interests of justice and society.'" *Commonwealth v. Amerson*, 281 Va. 414, 420 (2011) (quoting Code § 37.2-912(A)). This means that even if we agreed with the circuit court's interpretation of the SVPA—which we do not—the SVPA does not

give courts the authority to impose injunctions, and thus we are all the more compelled to reverse the circuit court's ruling.[2]

The circuit court stated in its order that "no Emergency Custody Order shall henceforth be issued against Mr. Messenger unless it is issued by this Court or other Court of competent jurisdiction." This directive contravenes the plain meaning of the statute wherein the General Assembly provided for magistrates to possess the ability to issue an ECO and exceeds the circuit court's bounds of authority under the SVPA. Therefore, we reverse the judgment of the circuit court.

### III. CONCLUSION

The circuit court evaluated the procedural history and facts underlying the ECO in this case, with Officer Gaines's testimony directly drawing its ire. We express no opinion regarding the merits of the underlying task set before the circuit court in this case. However, because the circuit court's order limits the ability of magistrates to issue ECOs contrary to the statutory framework enacted by the General Assembly, we reverse the circuit court's ruling to the extent that it limits the ability of the Commonwealth to seek an ECO from any appropriate judicial officer including a magistrate and we remand this matter for proceedings consistent with this opinion.

*Reversed and remanded.*

---

[2] We note that in addition to its consternation with the way Officer Gaines handled Messenger's supervision, the circuit court also expressed concern that the "magistrate . . . d[idn't] have the benefit of the history of knowing this case" to the level of familiarity that the circuit court did. But the circuit court's desire for continuity in deciding a case and its concerns with Messenger's supervision cannot override the will of the legislature as expressed in the plain language of the SVPA, which does not afford circuit courts the authority to issue the injunction it did in this case. *See Williams v. Williams*, 4 Va. App. 19, 23 (1987) ("[I]f a change is to occur in the statute, that is clearly the prerogative of the legislature and not the courts."). But the General Assembly has given circuit courts other tools it could have used in this situation, including the ability to transfer a defendant to the supervision of another probation officer, *see* Code § 53.1-148, and the power of summary contempt, *see* Code § 18.2-456.